**EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION,
Plaintiff–Appellant,**

**v.**

**ELGIN TEACHERS ASSOCIATION,
Defendant–Appellee.**

No. 93–3390.

United States Court of Appeals,
Seventh Circuit.

Argued March 29, 1994.

Decided June 17, 1994.

Carolyn L. Wheeler and Susan Starr (argued) E.E.O.C., Office of General Counsel, Washington, DC, for plaintiff-appellant.

Gerald C. Peterson (argued), Winston & Strawn; John L. Wren, Fay Hartog–Rapp, Seyfarth, Shaw, Fairweather & Geraldson; and David P. Kula, Scariano, Kula, Ellch & Himes, Chicago, IL, for defendants-appellees.

Before CUMMINGS, EASTERBROOK, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

For more than a decade, the Equal Employment Opportunity Commission has believed that portions of the collective bargaining agreements applicable to teachers in the public schools of Elgin, Illinois, between August 1979 and August 1983 violated Title VII of the Civil Rights Act of 1964. The school board and the teachers' union changed the provisions the EEOC deemed objectionable. No teacher sought any personal relief. Nonetheless, the EEOC filed this suit in 1986 seeking damages. It did not protest the dismissal of the school board as a party, see *EEOC v. Elgin Teachers Association,* 45 Fair Empl.Prac.Cas. 446, 1986 WL 68560 (N.D.Ill.1986) (holding that by virtue of 42 U.S.C. § 2000e–5(f)(1) only the Attorney General may sue a governmental body under Title VII), leaving only the Elgin Teachers Association as a defendant. Ever since, the EEOC has sought relief from the Association—a peculiar choice, because success in the litigation would ensure that any back pay

(the EEOC's goal) would come from the teachers' own pockets. After extended proceedings, the case came to an end with a finding by a magistrate judge (presiding by consent under 28 U.S.C. § 636(c)) that the EEOC lacked evidentiary support for its claims. 1993 U.S.Dist. LEXIS 4289, reconsideration denied, 1993 U.S.Dist. LEXIS 9503; see also 780 F.Supp. 1195 (1991), 658 F.Supp. 624 (1987).

During the years in question, the Elgin public schools offered teachers four kinds of leave:

- Sick Leave: Teachers earned 12 days of sick leave per year and could use them during any period of physical inability to work. A physician's certificate was needed for leave exceeding three days. At the end of the disability, the teacher had to return to work.
- General Leave: Tenured teachers could take unpaid leave of up to one year, in the discretion of the school district.
- Maternity Leave: On giving the school district a month's notice, pregnant teachers could take up to four semesters' unpaid leave. Six weeks of the leave would be presumed due to disability, and teachers could collect six weeks' sick pay without demonstrating actual inability to work, but this pay was contingent on return to work at the end of the leave.
- Disability Leave Due to Pregnancy: Pregnant teachers could take indefinite leave on account of actual inability to work arising out of pregnancy. This form of leave required the teacher to return to work as soon as the disability ended. Six weeks' disability was presumed; more required medical proof. Payment for time missed because of disability, up to the number of sick days in the teacher's account or donated by others, was not conditioned on return to work.

What teachers could not do was receive six weeks' pay during pregnancy leave, without demonstrating actual inability to work during that time (and without returning to work), followed by unpaid leave to care for the new baby. When a teacher asked for this combination, the school district put her on maternity leave, which offered time to care for the infant but did not provide compensation for the six weeks' presumed disability until the teacher returned to work. She filed a charge of sex discrimination, and, three years after the school district changed its policy, the EEOC commenced this suit.

 We reject the Association's contention that the EEOC lacked the right to do so. Although the EEOC must pursue conciliation, 42 U.S.C. § 2000e–5(b); *EEOC v. Zia Co.*, 582 F.2d 527 (10th Cir.1978), it failed to get all of what it wanted in bargaining. The EEOC sought monetary relief, which the Association, deeming financial benefits the responsibility of the school board, was unwilling to provide. Whether litigating to back up its demand was prudent—given that the EEOC had induced the Association and school district to adopt in 1983 a policy it deemed satisfactory, that the expense of defending the suit would come from the pockets of the very teachers the EEOC wanted to assist, and that pursuing this case drained resources from the budget available to assist persons suffering from discrimination—is a matter for the conscience of the person who authorized the suit, rather than for the judiciary. See *EEOC v. Keco Industries, Inc.*, 748 F.2d 1097, 1102 (6th Cir.1984).

 Sick leave and general leave are available to men and women on equal terms. Two other forms of leave are available only to pregnant women. Title VII, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work". Limitations on the benefits available only to pregnant women—such as the rule that a teacher must return to work in order to receive six weeks' pay without establishing actual inability to teach during that time—do not violate the Pregnancy Discrimination Act. *United States v. Palos Hills Board of Education*, 983 F.2d 790 (7th Cir.1993); *Maganuco v. Leyden Community High School*

*District,* 939 F.2d 440 (7th Cir.1991). Thus the EEOC needed to show that pregnant women lacked options that other teachers possessed.

■ The EEOC contends that teachers disabled by pregnancy were unable to take unpaid general leave following paid sick leave, although male teachers afflicted with disabling conditions were allowed to combine these leaves. The EEOC also believes that sick leave was reserved for "illness" and that the school district did not consider the normal course of pregnancy and childbirth an "illness." If the collective bargaining agreement indeed denied pregnant teachers use of sick leave for inability to work caused by pregnancy, or prevented them from combining sick and general leave while allowing other persons to combine these leaves, then we would have a genuine case of sex discrimination. Note the reference to the collective bargaining agreement: the Teachers Association cannot be held responsible for actions of the school district other than those implementing the agreement. It is a critical failing in the EEOC's case, for not a peep in the collective bargaining agreement addresses the question whether any teacher, male or female, may combine these two forms of leave, or implies that "illness" excludes reasons for inability to work (such as pregnancy and accidental injuries) other than disease. Surely the EEOC does not believe that a teacher who broke her leg while skiing would be denied sick leave because broken bones are not "illness" under the contract; nothing in the collective bargaining agreement treats pregnancy less favorably.

Early in 1981 a teacher who was scheduled to take a maternity leave became unable to work, because of mild toxemia, before the date her leave was to begin. Mary Duewel asked to combine regular sick leave with maternity leave. The school district said no; the Association filed a grievance and took the dispute to arbitration; the arbitrator pointed out that nothing in the collective bargaining agreement forbade this combination and ruled in Duewel's favor. The disposition of the Duewel grievance demonstrates that (a) pregnancy-related inability to work was covered by sick leave, and (b) different kinds of leave under the 1979–83 agreements could be combined. The Association says that, had the school district denied a teacher's request to use sick leave for pregnancy-related inability to work, or to combine sick leave with general leave, it would have filed another grievance. But no one made a concrete request. Taking the evidence in the light most favorable to the EEOC (as is appropriate, given that it lost on summary judgment), we infer that some teachers were discouraged from asking for regular sick leave or a combination of sick and general leaves. What is missing is evidence that agents of the Teachers Association talked them out of it. No purpose would be served by a trial in 1994 on the question whether, if a teacher had requested a particular disposition in 1980, and the school board had said no, the union would have filed a grievance. The only people who know the answer (if anyone can be said to "know" what response would have been forthcoming to a situation that never arose) are the union agents, who have uniformly stated that they would have opposed such a decision by the school system.

■ Ultimately, however, the EEOC may not be complaining about pregnant teachers' inability to combine sick with general leave. For it seems to us, as it did to the magistrate judge, that the EEOC's core position is that pregnancy means a *minimum* of six weeks' disability, for which a teacher should receive full pay. It is undisputed that until September 1983 a teacher could not receive six weeks' sick pay, without having to show actual inability to work, followed by unpaid leave to care for the infant. That is what the charging party requested; both the school district and the Association's executive director said it could not be done. But no teacher affected by a condition other than pregnancy could have obtained six weeks' sick pay without demonstrating inability to work. Surely the EEOC does not believe that pregnancy invariably incapacitates a woman for six weeks. Some women work until the day they give birth and are back on the job in a week. Heroic efforts by mothers may not be good for children, and considerate employers do not encourage mothers to desert their babies in this fashion, but the

school district's sick leave policy addresses only physical inability to work. Pregnant women in Elgin did not lack any benefit available to other teachers, and they are not entitled to relief under Title VII.

The Teachers' Association asks for an award of attorneys' fees under 42 U.S.C. § 2000e–5(k). The defendant in a suit under Title VII may recover attorneys' fees only when the action is "frivolous, unreasonable, or without foundation". *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). Cf. *Fogerty v. Fantasy, Inc.,* —— U.S. ——, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). The EEOC commenced this suit before we decided *Maganuco* and *Palos Hills;* it cannot be deemed frivolous at the outset. Cf. *McKnight v. General Motors Co.,* —— U.S. ——, 114 S.Ct. 1826, 128 L.Ed.2d 655 (1994). And the EEOC did not act "without foundation" in arguing that we should infer, from the failure of any pregnant teacher to combine sick with general leave, that such a combination was, if not impossible, at least discouraged. Lack of success on appeal does not imply that the litigating position was "unreasonable."

AFFIRMED.