[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 7, 2003
THOMAS  K. KAHN
CLERK

_____

Nos. 02-12386 & 02-13571
_____

D.C. Docket No. 99-00121-CV-1-MMP


EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff-Appellant,

versus

ASPLUNDH TREE EXPERT COMPANY,

Defendant-Appellee.


_____

Appeals from the United States District Court
for the Northern District of Florida

_____

**(August 7, 2003)**

Before BLACK and  HILL, Circuit Judges, and FITZPATRICK[*], District Judge.

_____

[*]Honorable Duross Fitzpatrick, United States District Judge for the Middle District of
Georgia, sitting by designation.

HILL, Circuit Judge:

These consolidated appeals are from the dismissal of the action and the award of attorney's fees against the Equal Employment Opportunity Commission. For the following reasons, we affirm the judgments of the district court.

I.

In 1993, Asplundh Tree Expert Company ("Asplundh") contracted with the Gainesville Regional Utilities (the "GRU") of Gainesville, Florida, to dig ditches and lay underground cable. The contract was to last three years, and was to expire on October 1996.

In November of 1995, Asplundh hired Robert Lewis as a laborer. Lewis was assigned to a three-person crew that worked in the field, digging ditches and laying cable.

On April 1, 1996, as Lewis and the other two members of his crew were laying cable, Pete Evans visited their work site. Evans is an employee of GRU. He is not, nor has he ever been, an employee of Asplundh. Evans' job for GRU is to visit Asplundh work sites, observe the crews and inspect the work.

Lewis claims that when Evans visited his work site on April 1, Evans made offensive racial jokes and even fashioned a noose from a piece of rope and placed it on Lewis' neck. Evans denies this claim.

Later that day, Lewis complained to the Asplundh general foreman, Larry Mattingly, who arranged a meeting between Evans and Lewis. At the meeting, Evans apologized for any offensive conduct, and thereafter, Lewis cannot recall any recurring harassment when Evans would visit his work site.

Beginning in May 1996, the contract work began winding down, and GRU started reducing the amount of work assigned to Asplundh. Asplundh, in turn, began reducing its crews. Lewis was terminated in the second round of lay-offs. In October, all the rest of the Gainesville crews were laid off.

Lewis contacted the Equal Economic Opportunity Commission (the "Commission" or the "EEOC") to pursue a complaint against GRU for Evans' actions. After providing the EEOC investigator, Deborah West, with a narrative of events, she advised him that his narrative failed to allege an actionable claim against Asplundh. Lewis then submitted a revised statement.

In August of 1996, Lewis filed his charge of discrimination, alleging disparate pay, racial harassment and retaliation. The charge specifically stated that

Lewis was subjected to racial harassment "from Pete Evens (sic), GRU Inspector." Additionally, the charge alleged that Lewis was "subjected to different terms and conditions of employment than my White co-workers (Blacks were paid lower than Whites and denied pay increases)." Lewis acknowledged in the charge that he was informed that his lay-off was due to a "lack of work." He further asserted that "no reason was given for Evens' (sic) harassment or the different terms and conditions of employment [pay disparity]."

The EEOC, through Investigator West, commenced an investigation of the allegations. This investigation continued for thirty-two months. Throughout the investigation, which focused on the disparate pay issue, Asplundh cooperated with the EEOC.

On March 31, 1999, the Commission issued a "Letter of Determination" finding "reasonable cause to believe the charge is true" on the harassment and retaliation allegations. No additional facts constituting harassment or retaliation were cited; nor did the Commission find any cause to believe that there was any discrimination by Asplundh in pay.

On April 7, 1999, West sent a document titled "Conciliation Agreement" to Asplundh's General Counsel, Phillip Tatoian, in Philadelphia, Pennsylvania,

4

requiring a response by April 23. This deadline provided 12 business days within which Asplundh was required to respond regarding the Gainesville, Florida incident. The proposal sought, *inter alia*, both reinstatement and front pay (despite the termination of the project on which Lewis had worked and the closure of the Gainesville office in 1996). It would also have required Asplundh to provide nationwide notice to its employees of Lewis' allegations and to conduct, within ninety days, nationwide anti-discrimination training of all its management and hourly employees. The proposal did not identify the EEOC's theory of Asplundh's liability for GRU employee Evan's alleged racial harassment of Lewis.

General Counsel Tatoian promptly retained a local Gainesville, Florida law firm to investigate the Florida incident and Asplundh's potential liability and respond to the EEOC. On April 28, 1999, Peter Sampo, a partner in that firm, forwarded by facsimile the following correspondence to EEOC Investigator West:

> The firm has been retained to represent the Respondent in the above-referenced matter. Your letter to General Counsel, Phillip Tatoian, dated April 7, 1999 and enclosing a proposed Conciliation Agreement has been forwarded to me for response. In order for me to provide informed advice to my client about this issue, I would like to arrange a phone call with you to discuss this case and attempt to understand the Commission's basis for its determination. Therefore, I ask that you extend the time for responding to the proposed Conciliation Agreement until we have had an opportunity to review this matter and you and I have had an opportunity to discuss the issues.

The EEOC did not respond to Sampo's letter that day or even acknowledge having received it. Instead, the next day, on April 29, 1999, the EEOC sent another letter to Tatoian in Philadelphia, declaring that "the Commission has not received . . . a reply to the conciliation proposal," that "efforts to conciliate this charge . . . were unsuccessful," and that "further conciliation efforts would be futile or non-productive."

Tatoian notified Sampo of this letter. Sampo attempted to contact West by telephone, but was unable to reach her, leaving her a message. On May 10, 1999, eleven days after receipt of Sampo's letter, West left a message on Sampo's office voice mail stating that the "case was out of [her] hands" and that Sampo should "contact the Regional Attorney." Two days later, on May 12, 1999, the EEOC filed this lawsuit.

The district court dismissed the lawsuit and awarded costs and fees to Asplundh, holding that the EEOC had failed to meet its statutory duty to engage in good faith conciliation.[1] We review these sanctions for abuse of discretion. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

---

[1]Title VII commits the decision of whether to stay proceedings for further efforts to conciliate or dismiss the action to the sound discretion of the trial court. *See* 42 U.S.C. § 2000e-5(f)(1); *EEOC v. Sears, Roebuck and Co.*, 650 F.2d 14 (2d Cir. 1981).

I.

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 200e-5(b) provides in pertinent part:

> If after investigation, the Commission determines there is reasonable cause to believe that the charge [of discrimination] is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practices by informal methods of conference, conciliation, and persuasion.

To satisfy the statutory requirement of conciliation, the EEOC must (1) outline to the employer the reasonable cause for its belief that Title VII has been violated; (2) offer an opportunity for voluntary compliance; and (3) respond in a reasonable and flexible manner to the reasonable attitudes of the employer. *EEOC v. Klinger Elec. Corp.*, 636 F.2d 104, 107 (5th Cir. 1981). In evaluating whether the EEOC has adequately fulfilled this statutory requirement, "the fundamental question is the reasonableness and responsiveness of the EEOC's conduct under all the circumstances." *Id.*

The EEOC asserts that the far-reaching proposal it sent to Asplundh, coupled with a "request" to respond within twelve business days, followed by a refusal to confer with Asplundh's counsel whose response, though prompt, fell beyond the arbitrary deadline set by the EEOC, constituted a bona fide effort to

conciliate. The district court disagreed, holding that the EEOC acted in a "grossly arbitrary manner" and "engage[d] in unreasonable conduct in failing to fulfill its statutory requirement to conciliate the matter."

We agree. In this case, the EEOC conducted an investigation of Lewis' allegations for almost three years before issuing its Letter of Determination, finding cause to believe that Asplundh had violated Title VII. During this extended period of time, Asplundh did not apprehend that this local incident, not involving its employee, would result in charges, so it did not retain local Gainesville counsel to investigate the allegations.

Then, in a flurry of activity, the EEOC issued a Letter of Determination, followed one week later by a proposed, nation-wide Conciliation Agreement, which provided twelve business days for Asplundh's General Counsel in Philadelphia to accept the agreement, submit a counter proposal to the EEOC or inform the EEOC that no agreement would be entered into. In neither of these communications did the EEOC identify any theory on which Asplundh could be held liable for the alleged conduct of Evans, the City of Gainesville, Florida's employee.

Upon receipt of the Letter of Determination, Asplundh promptly retained local counsel to investigate the allegations, who responded to the proposed Conciliation Agreement by requesting a reasonable extension of time within which to "understand the Commission's basis for its determination" and to adequately prepare a response. This faxed communication was not immediately acknowledged. Instead, the very next day the Commission sent another letter to Asplundh, again in Philadelphia, terminating conciliation and announcing its intent to sue.[2] This action was filed thirteen days later.

Under these circumstances, it cannot be said that the EEOC acted in good faith. In fact, its conduct "smacks more of coercion than of conciliation." *See EEOC v. Pet, Inc., Funsten Nut Div.,* 612 F. 2d 1001, 1002 (5th Cir. 1980). Despite the extended period of investigation, it appears that, once the EEOC decided it was ready to move forward, it would tolerate no "dallying" by Asplundh. Not even if Asplundh was given only one week between notice that, after almost three years, the Commission found "good cause" to believe it had violated Title VII, and its receipt of the Commission's conciliation "proposal." Not even if this proposal, which included no theory of liability, demanded a

___

[2]There is no record establishing that the Commission determined conciliation had failed prior to receipt of Sampo's faxed letter.

remedy that was on the one hand, national in scope, and on the other, impossible to perform (no reinstatement or front pay being available as the Gainesville Asplundh project had ended three years earlier). Not even if the Commission had received a letter evidencing Asplundh's clear intent to resolve the matter outside the courtroom, prior to notifying Asplundh that conciliation had been "unsuccessful." As we have said before, such an "all or nothing" approach on the part of a government agency, one of whose most essential functions is to attempt conciliation with the private party, will not do. *Id.*

Furthermore, we reject the Commission's position that it had no legal obligation to respond to Sampo's letter. The duty to conciliate is at the heart of Title VII. *EEOC v. Radiator Specialty Co.*, 610 F.2d 178 (4th Cir. 1979). It clearly reflects a strong congressional desire for out-of-court settlements of Title VII violations. *See Culpepper v. Reynolds Metals Co.*, 421 F.2d 888 (5th Cir. 1970). It is a condition precedent to the Commission's power to sue. 42 U.S.C. § 200e-5(b).

The courts have interpreted the statute to mean precisely what it says. Nothing less than a "reasonable" effort to resolve with the employer the issues raised by the complainant will do. *Klinger*, 636 F.2d at 107. This effort must, at a

10

minimum, make clear to the employer the basis for the EEOC's charges against it. *See EEOC v. Pacific Maritime Ass'n*, 188 F.R.D. 379, 381 (D.C. Or. 1999). Otherwise, it cannot be said that the Commission has provided a meaningful conciliation opportunity. *Id.*

Finally, there is no excuse for the Commission not to have kept negotiations with Asplundh open for a reasonable time upon receiving Sampo's letter. Regardless of whether it was received within the arbitrary deadline established by Investigator West, or even after the Commission had leapt to the conclusion, *sine qua non* to litigation, that negotiations had failed, there was no reason for the EEOC, upon learning of Asplundh's retention of local counsel who desired to pursue negotiations, not to re-open the conciliation process. The Commission readily admits that it routinely re-opens closed conciliations when the circumstances warrant. *See Klinger*, 636 F.2d at 104 (re-opened negotiations at employer's request); *EEOC v. Costco Companies, Inc.*, 2000 U.S. Dist LEXIS 19586 (S.D. Ca. 2000) (EEOC continued negotiating for four months after announcing that conciliation had failed).

As we said above, conciliation is at the heart of Title VII. In its haste to file the instant lawsuit, with lurid, perhaps newsworthy,[3] allegations, the EEOC failed to fulfill its statutory duty to act in good faith to achieve conciliation, effect voluntary compliance, and to reserve judicial action as a last resort. Under these circumstances, the sanction of dismissal, awarding attorneys' fees, is not an unreasonable remedy or an abuse of the district court's discretion. *See EEOC v. Pierce Packing Co.*, 669 F.2d 605, 608 (9th Cir. 1982) (affirming dismissal of EEOC's action and awarding attorneys' fees to defendant where EEOC acted unreasonably failing to engage in conciliation and filing suit). *See also Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001) ("The key to unlocking a court's inherent power [to award sanctions] is a finding of bad faith") (citing *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)).

II.

---

[3]The chronology of events in this case lend themselves to the interpretation that the Commission's haste may have been motivated, at least in part, by the fact that conciliation, *unlike litigation*, is not in the public domain. 42 U.S.C. § 2000e-5(b) ("Nothing said or done during and as a part of such [conciliation] may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned"). We note that the record reveals that the EEOC office in Miami, which is prosecuting this case, has apparently already made public by way of comments to the *New York Times* that this case involves the allegation of a noose incident. The article, which appeared in that paper on July 10, 2000, inaccurately suggests that an Asplundh employee placed a noose around the Lewis' neck.

12

For the foregoing reasons, we conclude that the Commission failed to make a bona fide effort to conciliate this case in a reasonable and responsive manner and that the remedy of dismissal and the award of attorneys' fees by the district court was not an abuse of discretion. The judgments of the district court are AFFIRMED.