In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2456

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

*Plaintiff-Appellant,*

*v.*

MACH MINING, LLC,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:11-cv-879 — **J. Phil Gilbert**, *Judge.*

ARGUED OCTOBER 29, 2013 — DECIDED DECEMBER 20, 2013

Before WOOD, *Chief Judge*, and KANNE and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge*. Title VII of the Civil Rights Act of 1964 directs the Equal Employment Opportunity Commission to try to negotiate an end to an employer's unlawful employment practices before suing for a judicial remedy. 42 U.S.C. § 2000e-5(b). Defendant Mach Mining, LLC, the target of an EEOC lawsuit for sex discrimination in hiring, sees in this

statutory instruction an implied affirmative defense in its discrimination case. Mach Mining seeks dismissal of the EEOC's suit on the ground that the agency failed to engage in good-faith conciliation before filing suit. The EEOC moved for summary judgment on this "failure-to-conciliate" defense, arguing that courts should look no further than the face of the complaint to review the sufficiency of the conciliation process itself. The district court denied that motion but certified for interlocutory appeal the question whether an alleged failure to conciliate is subject to judicial review in the form of an implied affirmative defense to the EEOC's suit.

We reverse the district court's denial of summary judgment on the affirmative defense. The language of the statute, the lack of a meaningful standard for courts to apply, and the overall statutory scheme convince us that an alleged failure to conciliate is not an affirmative defense to the merits of a discrimination suit. Finding in Title VII an implied failure-to-conciliate defense adds to that statute an unwarranted mechanism by which employers can avoid liability for unlawful discrimination. They can do so through protracted and ultimately pointless litigation over whether the EEOC tried hard enough to settle. An implied failure-to-conciliate defense also runs flatly contrary to the broad statutory prohibition on using what was said and done during the conciliation process "as evidence in a subsequent proceeding." 42 U.S.C. § 2000e-5(b). We therefore disagree with our colleagues in other circuits and hold that the statutory directive to the EEOC to negotiate first and sue later does not implicitly create a defense for employers who have allegedly violated Title VII.

*Factual and Procedural Background*

The EEOC received a charge of discrimination in early 2008 from a woman who claimed Mach Mining had denied a number of her applications for coal mining jobs because of her gender. After investigating the charge, the agency determined there was reasonable cause to believe Mach Mining had discriminated against a class of female job applicants at its mine near Johnston City, Illinois. In late 2010, the EEOC notified the company of its intention to begin informal conciliation. The parties discussed possible resolution but did not reach an agreement. In September 2011, the EEOC told Mach Mining that it had determined the conciliation process had been unsuccessful and that further efforts would be futile. The EEOC filed its complaint in the district court two weeks later. There is no challenge here to the facial sufficiency of these documents. See *EEOC v. Shell Oil Co.*, 466 U.S. 54, 81 (1984).

Mach Mining's answer denied unlawful discrimination and asserted several affirmative defenses. The only defense relevant to this appeal is the allegation that the suit should be dismissed because the EEOC failed to conciliate in good faith. The parties have spent nearly two years sparring over whether this is a sufficient ground for dismissing the discrimination case. The defense has been the subject of extensive discovery requests by Mach Mining seeking information about the EEOC's investigation and conciliation efforts. The defense has also slowed discovery on the merits of the underlying discriminatory hiring claim. Mach Mining has asserted failure to conciliate as a basis for objecting to a number of the EEOC's discovery requests. The EEOC moved for summary judgment solely on the issue of whether, as a matter of law, an alleged

failure to conciliate is an affirmative defense to its suit for unlawful discrimination.

In denying the EEOC's motion, the district court held that courts should evaluate conciliation to the extent needed to "determine whether the EEOC made a sincere and reasonable effort to negotiate." *EEOC v. Mach Mining, LLC*, 2013 WL 319337, at *5 (S.D. Ill. Jan. 28, 2013) (internal quotations omitted). Because the EEOC had not argued that its efforts were either sincere or reasonable, only that they were not reviewable as a defense to unlawful discrimination, the district court had no occasion to demonstrate what its proposed standard might mean in practice. The district court followed decisions of other circuits holding (and sometimes simply assuming) that judicial review of conciliation is appropriate in the form of an affirmative defense. See *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657 (8th Cir. 2012); *EEOC v. Asplundh Tree Expert Co.*, 340 F.3d 1256 (11th Cir. 2003); *EEOC v. Johnson & Higgins, Inc.*, 91 F.3d 1529 (2d Cir. 1996); *EEOC v. Keco Indus., Inc.*, 748 F.2d 1097 (6th Cir. 1984); *EEOC v. Klingler Elec. Corp.*, 636 F.2d 104 (5th Cir. 1981); *EEOC v. Radiator Specialty Co.*, 610 F.2d 178 (4th Cir. 1979); *EEOC v. Zia Co.*, 582 F.2d 527 (10th Cir. 1978).

The district court recognized at the same time that the EEOC's position had merit and raised arguments not considered by other circuits. It thus certified for interlocutory appeal under 28 U.S.C. § 1292(b) whether and to what extent conciliation is judicially reviewable through an implied affirmative defense. We accepted the appeal because it presents a controlling question of law as to which there is substantial ground for difference of opinion, because the resolution may advance the

ultimate termination of the case, and because of the importance of the issue.

*Analysis*

In evaluating whether Mach Mining has a legally viable affirmative defense for failure to conciliate, we consider (1) the statutory language, (2) whether there is a workable standard for such a defense, (3) whether the defense might fit into the broader statutory scheme, and (4) our relevant case law. We then review (5) the decisions of other courts recognizing the affirmative defense that we reject here.

I.  *Statutory Language*

We begin our analysis, of course, with the text of the statute, mindful of the Supreme Court's recent admonition that "Congress' special care in drawing so precise a statutory scheme" as Title VII "makes it incorrect to infer that Congress meant anything other than what the text does say." *University of Texas Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2530 (2013). The text of Title VII contains no express provision for an affirmative defense based on an alleged defect in the EEOC's conciliation efforts. In "the context of a statute as precise, complex, and exhaustive as Title VII," *id.*, this silence itself is compelling. We do not rely only on that silence, however. We are also persuaded by the express statutory language making clear that conciliation is an informal process entrusted solely to the EEOC's expert judgment and that the process is to remain confidential.

The EEOC's enforcement procedures under Title VII are spelled out in section 706 of the Civil Rights Act of 1964 as

amended. 42 U.S.C. § 2000e-5. The process begins when the agency receives a charge of discrimination from an aggrieved employee or a Commission member. It then must notify the employer and investigate whether reasonable cause exists to support the allegations.

A finding of cause triggers the conciliation process: "If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." § 2000e-5(b). The EEOC may sue only after it "has been unable to secure from the respondent a conciliation agreement acceptable to the Commission." § 2000e-5(f)(1). Title VII allows the entire process to move fairly quickly, at least in some cases. The only time limit on the EEOC's ability to sue is that it not do so within the first 30 days after receiving the original charge. See § 2000e-5(f)(1); *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 360 (1977).

The words are significant: "*endeavor to eliminate*" discriminatory practices "by *informal methods* of conference, conciliation, and persuasion." § 2000e-5(b). If it is "unable to secure from the respondent a conciliation agreement *acceptable to the Commission*," the agency may then sue. § 2000e-5(f)(1). What we have then is an instruction to the EEOC to try, by whatever methods of persuasion it chooses short of litigation, to secure an agreement that the agency in its sole discretion finds acceptable. It would be difficult for Congress to have packed more deference to agency decision-making into so few lines of text.

The only other statutory terms in Title VII addressing the conciliation process make all details of the conciliation process strictly confidential. Violators are even subject to criminal prosecution: "Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned. Any person who makes public information in violation of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both." § 2000e-5(b).

An implied affirmative defense for failure to conciliate conflicts directly with the confidentiality provision. See generally *United States v. Misc. Firearms*, 376 F.3d 709, 712 (7th Cir. 2004) (courts should avoid interpretations that "render other provisions of the statute inconsistent, meaningless, or superfluous").[1]

---

[1] The parties dispute whether the criminal provision applies equally to the EEOC and to employers, as well as whether it would penalize using information as evidence if it is filed under seal (and thus arguably not "made public"). Case law on these questions is scattered and inconsistent. Compare *EEOC v. LifeCare Mgmt. Servs., LLC*, No. 02:08-CV-1358, 2009 WL 772834 (W.D. Pa. Mar. 17, 2009) (district judge recused after viewing conciliation documents that were filed under seal and became subject of dispute; court relied on confidentiality provision but did not consider how it might apply to the entire failure-to-conciliate defense), with *EEOC v. First Midwest Bank, NA*, 14 F. Supp. 2d 1028 (N.D. Ill. 1998) (recounting at length the procedural and substantive details of parties' conciliation efforts, without any mention of confidentiality). But we need not explore all subtleties of the criminal provision here. Also, the EEOC has produced

(continued...)

The statute's explicit prohibition against using the contents of conciliation as evidence in a later proceeding is broad. Unlike Federal Rule of Evidence 408(b) regarding evidence of settlement negotiations, Title VII contains no exception allowing such information to be admitted for a collateral purpose, such as to satisfy a court that the EEOC's efforts to conciliate were sufficient. Implying a failure-to-conciliate defense in Title VII would thus require courts to evaluate conciliation without evidence to weigh, at least without the consent of both parties. An alternative but no more persuasive solution to the problem would be first to imply this affirmative defense and then to construct an implied set of exceptions to the sweeping statutory requirement of confidentiality. The better reading is to avoid the conflict, stick to the text, and reject both the non-statutory affirmative defense and the non-statutory exceptions to confidentiality.

## II. *No Standard for Review*

The second major problem with an implied failure-to-conciliate defense is the lack of a meaningful standard to apply. Title VII says nothing about the informal methods the EEOC is required to use—must it involve all three of confer-ence, conciliation, and persuasion?—or how hard the agency should "endeavor" to pursue them. The statute gives no

---

[1] (...continued)
evidence related to conciliation efforts before courts that have recognized the failure-to-conciliate defense. These actions appear to have been efforts to comply with conflicting and, we believe, mistaken interpretations of the law. The EEOC has not waived its right to argue that the failure-to-conciliate defense is mistaken at its foundation.

description of what a negotiated settlement should look like beyond eliminating the discriminatory conduct. And the statute gives the agency complete discretion to accept or reject an employer's offer for any reason. Such an open-ended provision looks nothing like a judicially reviewable prerequisite to suit.

Nor can Mach Mining explain just how many offers, counteroffers, conferences, or phone calls should be necessary to satisfy judicial review, despite repeated invitations to provide the court with a workable standard. In its brief, the company says review would sometimes require the EEOC to respond to employers' requests for more information, but sometimes not. Sometimes the agency would have to show how it calculated monetary damages, but sometimes not. Sometimes it would have to identify all individual complainants, identify potential new hires, or agree to face-to-face meetings, but sometimes not. The defendant's uncertainty is consistent with the cases that have recognized this affirmative defense, but we are not tempted to send district courts down such a dimly lighted path.[2]

---

[2] Courts applying a failure-to-conciliate defense have varied widely in what evidence they consider and what actions they require of the EEOC. Must the EEOC identify all claimants during conciliation? Compare *EEOC v. Swissport Fueling, Inc.*, 916 F. Supp. 2d 1005, 1037–38 (D. Ariz. 2013) (yes), with *EEOC v. Scolari Warehouse Mkts., Inc.*, 488 F. Supp. 2d 1117, 1129 n.14 (D. Nev. 2007) (no). Must the EEOC provide during conciliation the basis for its damages demand? Compare *EEOC v. Bloomberg LP*, 751 F. Supp. 2d 628, 641–42 (S.D.N.Y. 2010) (yes, agency must provide more than "basic information"), with *EEOC v. Hibbing Taconite Co.*, 266 F.R.D. 260, 274 (D.

(continued...)

In the absence of any statutory guide, some courts that have approved the implied affirmative defense for failure to conciliate have imposed a requirement of good faith. *E.g.*, *Keco Indus.*, 748 F.2d at 1102; *Zia Co.*, 582 F.2d at 533. Mach Mining argues that the National Labor Relations Act offers a template for how courts should analyze good faith in this context, and some courts have indeed relied on the NLRA for guidance in evaluating Title VII conciliation. *E.g.*, *Zia Co.*, 582 F.2d at 533.

Unlike Title VII, however, the NLRA contains an explicit statutory command to employers and unions to negotiate in good faith, 29 U.S.C. § 158(d), so courts have done their best to enforce that explicit command. We have warned about the problems of applying such a standard to a process like conciliation under Title VII: "We know from cases under the National Labor Relations Act, which requires unions and employers to bargain in good faith, how difficult it is to enforce such a duty,

---

[2] (...continued)

Minn. 2009) (no), and *EEOC v. Riverview Animal Clinic, PC*, 761 F. Supp. 2d 1296, 1302 (N.D. Ala. 2010) (agency can "negotiate in good faith even if it does not have an accurate final computation of actual damages"). Is the substantive reasonableness of the EEOC's settlement position relevant? Compare *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 468 (5th Cir. 2009) (finding failure to conciliate based in part on substance of agency's "insupportable" settlement demand), with *EEOC v. High Speed Enter., Inc.*, No. CV-08-01789, 2010 WL 8367452, at *5 (D. Ariz. Sept. 30, 2010) (disclaiming any reliance on value of agency's settlement offer). May the EEOC raise its damages demand significantly? Compare *EEOC v. PBM Graphics Inc.*, 877 F. Supp. 2d 334, 363 (M.D.N.C. 2012) (agency's sudden quintupling of monetary demands was not failure to conciliate), with *EEOC v. First Midwest Bank, NA*, 14 F. Supp. 2d 1028, 1032 (N.D. Ill. 1998) (agency's sudden quadrupling of monetary demands showed failure to conciliate).

because it jostles uneasily with the right of each party to a labor negotiation to refuse an offer by the other even if a neutral observer would think it a fair, even a generous, offer." *Doe v. Oberweis Dairy*, 456 F.3d 704, 711 (7th Cir. 2006) (internal citations omitted); see also *Nassar*, 133 S. Ct. at 2530 (Title VII's "detailed statutory scheme" should not be read in light of "capacious language" of other statutes).

The parties here agree that, like a party to a labor negotiation, the EEOC is free to refuse an offer that might appear fair or even generous to a neutral observer. Courts that have recognized an implied affirmative defense for failure to conciliate draw a distinction between review of the conciliation process, which they permit, and review of the substance of the EEOC's position, which is supposedly prohibited. See, *e.g.*, *EEOC v. Hibbing Taconite Co.*, 266 F.R.D. 260, 273 (D. Minn. 2009) ("While the substance and details of any settlement offers, or discussions, are not discoverable, the actions and efforts, that are undertaken by the EEOC to conciliate the matter … are subject to the Court's review.").

But the distinction between process and substance in this context is unlikely to survive the adversarial crucible of litigation. A court reviewing whether the agency negotiated in good faith would almost inevitably find itself engaged in a prohibited inquiry into the substantive reasonableness of particular offers—not to mention using confidential and inadmissible materials as evidence—unless its review were so cursory as to be meaningless. Was it unreasonable for the EEOC to refuse one more meeting, one more request for information, or one more extension of time to respond, or to raise its settlement demand? So unreasonable as to permit an

inference of bad faith? These questions cannot be answered without a close look at the substance of the parties' positions, yet all agree that Title VII leaves the choice to settle or not entirely to the EEOC's unreviewable discretion.

While Mach Mining did not plead its conciliation defense under the Administrative Procedure Act, its argument relies heavily on the statute's "basic presumption of judicial review" that is so central to American law in general and the APA in particular. See *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967), abrogated in part on other grounds, *Califano v. Sanders*, 430 U.S. 99 (1977). The APA thus casts a helpful light because the lack of a workable standard for courts to apply makes conciliation look very much like an action "committed to agency discretion by law," which the APA excepts from its general presumption of judicial review. See 5 U.S.C § 701(a); cf. § 704 (only actions "made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review"). Under this exception, court involvement "is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Webster v. Doe*, 486 U.S. 592, 600 (1988), quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

Under the APA, this exception is generally narrow. It applies only "if a careful analysis of the statutory language, statutory structure, legislative history, and the nature of the agency action requires it." *Home Builders Ass'n of Greater Chicago v. U.S. Army Corps of Engineers*, 335 F.3d 607, 615 (7th Cir. 2003). Nevertheless, the exception is not so narrow as to disappear entirely into the rule, and we have applied it where the statutory text and structure as well as the nature of the

agency decision so demand. See *Anaya-Aguilar v. Holder*, 683 F.3d 369, 373 (7th Cir. 2012)*; Singh v. Moyer*, 867 F.2d 1035, 1038–39 (7th Cir. 1989); *Board of Trade of City of Chicago v. Commodity Futures Trading Comm'n*, 605 F.2d 1016, 1025 (7th Cir. 1979). We need not do so directly here because, again, Mach Mining has not explicitly grounded its defense in the APA. But our reasoning is consistent with the APA exception because the statutory directive to attempt conciliation is so similar to those open-ended grants of authority that courts have found committed to agency discretion by law and thus not subject to judicial review under the APA.

To be sure, the presumption favoring judicial review is not limited to the APA. It extends to cases such as this one, in which the agency action is not being challenged under the APA. In *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986), the Supreme Court considered a non-APA challenge to regulations setting out how to calculate Medicare Part B benefits. Noting the "strong presumption" in favor of review, *id*. at 670, the Court held the regulations were judicially reviewable. It distinguished an earlier case that said individual benefit computations were unreviewable because the challenge in *Bowen* was to a general agency rulemaking and thus presented less danger of flooding courts with burdensome litigation in contravention of the statutory scheme. *Id.* at 675–76.

Similarly, in *Traynor v. Turnage*, 485 U.S. 535 (1988), the Court applied the presumption of judicial review to petitioners' challenge to a Veterans' Administration regulation that allegedly violated the Rehabilitation Act of 1973. *Traynor* explained that the challenge to the particular regulation's

lawfulness would not drag courts into complex, fact-specific determinations or open the door to "expensive and time-consuming litigation" over individual claims. *Id.* at 544–45. The broader challenge to the regulation was thus not barred by an earlier case finding that Congress had expressly precluded review of individual veteran benefits awards.

While upholding judicial review in each case, both *Bowen* and *Traynor* acknowledged that the general "presumption favoring judicial review of administrative action is just that—a presumption." *Block v. Community Nutrition Inst.*, 467 U.S. 340, 349 (1984), cited in *Bowen*, 476 U.S. at 673, and *Traynor*, 485 U.S. at 542. It may be overcome "whenever the congressional intent to preclude judicial review is fairly discernible in the statutory scheme." *Block*, 467 U.S. at 351 (internal quotations omitted); see also *Morris v. Gressette*, 432 U.S. 491, 504–05 (1977).

Unlike the pure questions of law the Supreme Court found reviewable in *Traynor* and *Bowen*, case-by-case adjudication of the sufficiency of the EEOC's conciliation efforts would require that courts be given some metric by which to analyze the parties' conduct. Congress's failure to provide even the outlines of such a standard tends to show that it did not intend for judicial review of conciliation through an implied affirmative defense. This conclusion becomes compelling when considered alongside the language of the statute, including the prohibition on evidence from the conciliation process. Judicial review under the implied affirmative defense would have to proceed without a workable legal standard and even without evidence.

III.    *Review Undermines Conciliation*

An implied affirmative defense for failure to conciliate also does not fit well with the broader statutory scheme of Title VII. Offering the implied defense invites employers to use the conciliation process to undermine enforcement of Title VII rather than to take the conciliation process seriously as an opportunity to resolve a dispute. The Supreme Court has recognized "Congress's intent that voluntary compliance be the preferred means of achieving the objectives of Title VII." *Ricci v. DeStefano*, 557 U.S. 557, 581 (2009) (internal quotations omitted). In 1972 Congress gave the EEOC the new power to bring suit in order to spur more voluntary compliance. *EEOC v. Kimberly-Clark Corp.*, 511 F.2d 1352, 1357 (6th Cir. 1975). Congress's purpose is not served well by litigating the parties' informal endeavors at "conference, conciliation, and persuasion." Simply put, the conciliation defense tempts employers to turn what was meant to be an informal negotiation into the subject of endless disputes over whether the EEOC did enough before going to court. Such disputes impose significant costs on both sides, as well as on the court, and to what end?

All the employer should legitimately hope to gain is some unspecified quantum of additional efforts at conciliation by the EEOC. The result of such a defense, as we have said in a closely related context, is to "protract and complicate Title VII litigation, and with little or no offsetting benefit." *Oberweis Dairy*, 456 F.3d at 710 (reversing summary judgment for employer; complaining party's failure to cooperate did not provide employer with affirmative defense); see also *EEOC v. Chicago Miniature Lamp Works*, 526 F. Supp. 974, 975–76 (N.D.

Ill. 1981) (discussing at length "undesirability of turning every properly-filed EEOC action into a two-fold action" by litigating first the EEOC's probable cause finding and then the actual merits).

Of course, we doubt that many employers will go to the trouble of putting on a failure-to-conciliate defense purely out of a desire to see their adversary across the negotiating table again. What most hope to win is dismissal of the case, or at least its delay. See, *e.g.*, *Asplundh Tree*, 340 F.3d at 1261; *EEOC v. Bloomberg LP*, — F. Supp. 2d —, —, 2013 WL 4799150, at *10–11 (S.D.N.Y. Sept. 9, 2013) (dismissing case while acknowledging that meritorious discrimination claims "now will never see the inside of a courtroom").

If an employer engaged in conciliation knows it can avoid liability down the road, even if it has engaged in unlawful discrimination, by arguing that the EEOC did not negotiate properly—whatever that might mean—the employer's incentive to reach an agreement can be outweighed by the incentive to stockpile exhibits for the coming court battle. Similar reasoning explains why Title VII makes negotiations confidential in the first place. See *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 881 (5th Cir. 1981) ("the prospect of disclosure or possible admission into evidence of proposals made during conciliation efforts would tend to inhibit the kind of free and open communication necessary to achieve unlitigated compliance with the requirements of Title VII").

An employer cannot be sure in advance that its defense will carry the day, of course. But the cost to the employer of pursuing that defense rather than settling before suit is filed is

likely to be relatively low—a civil complaint from the EEOC, perhaps accompanied by a negative press release—because the employer remains free to settle after the EEOC files suit. The potential gains of escaping liability altogether will, in some cases, more than make up for the risks of not engaging in serious attempts at conciliation. And the stronger the EEOC's case on the merits, the stronger the incentive to use a failure-to-conciliate defense. We see no persuasive reason to find that a statute meant to encourage voluntary compliance on the part of employers implied a defense that would create such contrary incentives for them. See generally *EEOC v. Shell Oil Co.*, 466 U.S. 54, 81 (1984) (rejecting employer's effort to litigate adequacy of EEOC's disclosure of facts supporting subpoena where such disputes would slow and undermine EEOC's enforcement efforts).

Mach Mining and the amici supporting it argue strenuously that judges must police the EEOC, lest it either abandon conciliation altogether or misuse it by advancing unrealistic and even extortionate settlement demands. Neither scenario is plausible. We are not persuaded by Mach Mining's argument that EEOC field offices are so eager to win publicity or to curry favor with Washington by filing more lawsuits that they will needlessly rush to court.

First, in the context of deciding whether to imply private rights of action, the Supreme Court has repeatedly made clear that not every statutory directive is the subject of a private right of action. See generally *Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004) ("this Court has recently and repeatedly said that a decision to create a private right of action is one better left to legislative judgment in the great majority of cases");

*Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001) (without congressional "intent to create not just a private right but also a private remedy … a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute").

The Court's reluctance to imply private rights of action would seem to apply with similar force to implied affirmative defenses, especially as defenses for violations of federal law where Congress provided expressly for the enforcement action itself. Using the standards for implied rights of action, there is no indication that Title VII's directive to conciliate was for the special benefit of employers or that they have a right to conciliation. Congress was focused on effective enforcement of the anti-discrimination standards of Title VII, not creating new rights for employers. See *Alexander*, 532 U.S. at 289 ("Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'"), quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981).

Second, the agency has its own powerful incentives to conciliate, and the available data show that it does so. The EEOC currently processes and investigates nearly 100,000 charges of discrimination a year, but it ultimately files suit in only a few hundred cases. In fiscal year 2012, the agency attempted conciliation in 4207 cases, was unsuccessful in 2616, yet filed suit on the merits in just 122. All Statutes: FY 1997 Through FY 2012, http://www.eeoc.gov/eeoc/statistics/enforcement/all.cfm; EEOC Litigation Statistics, FY 1997 Through FY 2012, http://www.eeoc.gov/eeoc/statistics/enforcement/litigation.cfm

(both sites last visited Dec. 20, 2013). That so few *unsuccessful* efforts at conciliation end up in court shows how constrained the agency is by practical limits of budget and personnel.

The agency's practices and priorities are also checked in this regard by the two other branches of government, making it less urgent for the judiciary to add its supervision, at least without a statutory command to do so. Although structured as an independent agency, the EEOC shares its enforcement authority with the Attorney General, see 42 U.S.C. § 2000e-5(f), and it is attuned to the policy priorities of the executive. See Neal Devins, *Political Will and the Unitary Executive: What Makes an Independent Agency Independent?*, 15 Cardozo L. Rev. 273, 297–98 (1993). As it can with other agencies, Congress can exert its influence on the EEOC through oversight hearings, adjustments to appropriations, and statutory amendments. In addition, the commissioners who head the agency are appointed by the President with the advice and consent of the Senate. In short, even without the judiciary trying to monitor the EEOC's efforts at conciliation, those efforts are subject to meaningful scrutiny.

IV.     *Applicable Seventh Circuit Case Law*

We turn next to our own decisions that provide some guidance on this question of an implied defense. We have not had occasion before this case to examine this particular question about an implied defense for failure to conciliate. But our rejection of the defense is consistent with our earlier cases rejecting similar attempts by employers to change the focus from their employment practices to the agency's pre-suit processes.

For example, in *EEOC v. Elgin Teachers Association*, 27 F.3d 292 (7th Cir. 1994), the EEOC sued a local teachers union for damages related to a collective bargaining agreement that the agency believed was discriminatory. Rejecting the union's claim that the EEOC "lacked the right" to sue, we noted that although "the EEOC must pursue conciliation, it failed to get all of what it wanted in bargaining." *Id.* at 294 (internal citations omitted). While we doubted whether the teachers union was the best target for suit, we made clear that the decision to go to court was "a matter for the conscience of the person who authorized the suit, rather than for the judiciary." *Id.* The same reasoning applies to judicial review of conciliation efforts.

More recently, in *Doe v. Oberweis Dairy*, 456 F.3d 704 (7th Cir. 2006), we held that the defendant employer was not entitled to summary judgment on the ground that the com- plainant, a former employee, had failed to cooperate with the EEOC before suit was filed. Although the EEOC requires complainants to cooperate with its investigations, we refused to read into Title VII a rule that good-faith cooperation was a prerequisite to individual suit or that failure to cooperate would be an affirmative defense. Nothing in the statutory text expressed any such requirement, and imposing it would needlessly complicate Title VII cases: "To allow employers to inject such an issue by way of defense in every Title VII case would cast a pall over litigation under that statute." *Id.* at 711. The same reasoning applies to a failure-to-conciliate defense.

*EEOC v. Caterpillar, Inc.*, 409 F.3d 831 (7th Cir. 2005), is even more closely on point. In *Caterpillar*, the defendant employer had moved for partial summary judgment on the theory that

the EEOC's complaint went beyond the scope of the investigation required by 42 U.S.C. § 2000e-5(b). We affirmed denial of summary judgment. Distinguishing cases with contrary dicta, we held that the "existence of probable cause to sue is generally and in this instance not judicially reviewable." 409 F.3d at 833. Nothing in the language of Title VII or our past case law invites courts to review the agency's finding of probable or reasonable cause, and the same is true of its approach to conciliation.

Mach Mining offers two grounds for distinguishing *Caterpillar*. It first argues that any error as to whether probable cause exists will be corrected at trial while, absent court review, insufficient conciliation will remain forever unremedied. We are not persuaded. A trial will check defects in the conciliation process to the same extent it will a lack of probable cause. All an employer loses from deficient conciliation effort is the chance to comply with the discrimination laws without need for a trial, and we must keep in mind that the EEOC has complete discretion to decide whether to settle.

If the EEOC's demands are so high that they offer no real chance at bargaining, a trial on the merits should bring them back to earth. If the employer feels it lacked the time or information necessary to settle before suit is filed, litigation will provide both. The employer can still settle, and district courts have many tools available to encourage reasonable settlements. We see no reason the EEOC would be likely to prefer spending its limited litigation budget rather than accept success in the form of a reasonable settlement. Moreover, the parties can settle quickly and without court approval because EEOC suits are not considered representative actions subject to

the requirements of Rule 23. See *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 288 (2002); cf. Fed. R. Civ. P. 23(e). It is true that the employer may have to bear the burden of trial, but that is equally true in the probable cause context. Mach Mining asserts also that the existence of probable cause is particularly the subject of agency expertise in a way that a failure to conciliate is not. This claim, offered without further support or explanation, is no more persuasive.

Perhaps the closest our cases come to supporting a failure-to-conciliate defense is *EEOC v. Massey-Ferguson, Inc.*, 622 F.2d 271, 277 (7th Cir. 1980), where our discussion of a laches defense shows that some evidence from the conciliation process was offered and considered. We rejected the employer's attempt to require the EEOC to raise back-pay claims in conciliation as a condition of seeking back-pay in the lawsuit. Nevertheless, our discussion seems to have assumed some degree of judicial review might be available, and the evidence from the conciliation process was deemed relevant to a defense of laches. The parties did not make an issue of the conciliation process in *Massey-Ferguson*, however. Nor did they raise the issue of confidentiality or confront the issues of statutory text we address here. The opinion therefore adds little to Mach Mining's case here, while *Caterpillar*, *Oberweis Dairy*, and *Elgin Teachers Association* show our consistent skepticism toward employers' efforts to change the focus from their own conduct to the agency's pre-suit actions.

V.  *Other Circuits*

Our decision makes us the first circuit to reject explicitly the implied affirmative defense of failure to conciliate. Because the

courts of appeals already stand divided over the level of scrutiny to apply in reviewing conciliation, our holding may complicate an existing circuit split more than it creates one, but we have proceeded as if we are creating a circuit split.[3]

As explained in more detail below, the Second, Fifth, and Eleventh Circuits evaluate conciliation under a searching three-part inquiry. *EEOC v. Asplundh Tree Expert Co.*, 340 F.3d 1256, 1259 (11th Cir. 2003); *EEOC v. Johnson & Higgins, Inc.*, 91 F.3d 1529, 1534 (2d Cir. 1996); *EEOC v. Klingler Elec. Corp.*, 636 F.2d 104, 107 (5th Cir. 1981). The Fourth, Sixth, and Tenth Circuits require instead that the EEOC's efforts meet a minimal level of good faith. *EEOC v. Keco Indus., Inc.*, 748 F.2d 1097, 1102 (6th Cir. 1984); *EEOC v. Radiator Specialty Co.*, 610 F.2d 178, 183 (4th Cir. 1979); *EEOC v. Zia Co.*, 582 F.2d 527, 533 (10th Cir. 1978). While we respect the views of our colleagues in these circuits, we also recognize our duty to decide our cases independently and to disagree when we must. See, *e.g.*, *Atchison, Topeka & Santa Fe Ry. Co. v. Pena*, 44 F.3d 437, 443 (7th Cir. 1994), *aff'd sub nom. Bhd. of Locomotive Engineers v. Atchison, Topeka & Santa Fe R.R. Co.*, 516 U.S. 152 (1996); *Grandberry v. Keever*, 735 F.3d 616, 618 (7th Cir. 2013).

To the extent other courts have explained why judicial review of conciliation is appropriate in the form of an implied affirmative defense to claims of unlawful discrimination, we

---

[3] We have circulated this opinion among all judges of this court in regular active service pursuant to Circuit Rule 40(e). No judge favored a rehearing en banc on the question of rejecting the implied affirmative defense for failure to conciliate.

are not persuaded to join them.[4] Few courts recognizing this
implied defense have addressed the issue directly; those that
have recognized it have pointed generally to a need to give
effect to Congress's intention that the EEOC address discrimi-
nation through voluntary settlement. See, *e.g.*, *EEOC v. Bass Pro
Outdoor World, LLC*, No. 4:11-CV-3425, 2013 WL 5515345, at *4
(S.D. Tex. Oct. 2, 2013); *Bloomberg LP*, — F. Supp. 2d at —, 2013
WL 4799150, at *7. As we have explained, though, apart from
the problems this poses under the statutory text, including the
confidentiality requirement, we are also skeptical that court
oversight is necessary or that it encourages compliance rather
than strategic evasion on the part of employers.

Given Title VII's deliberate silence concerning the details of
conciliation, it is not surprising that other courts have strug-
gled to provide meaningful guidance on how to judge the
process. The approach adopted in the Fourth, Sixth, and Tenth
Circuits proposes to inquire into the good faith of the EEOC's
efforts. As we have explained, we see no reason to import a
judicially reviewable requirement of good faith into the

---

[4] Nor are we persuaded by the arguments of Mach Mining's amici that
Congress has implicitly "acquiesced" to these courts' long-standing
interpretations. Amicus Br. of Retail Litig. Ctr., Inc., U.S. Chamber of
Commerce, and Nat'l Fed. of Indep. Bus. at 18, citing *Block v. Community
Nutrition Inst.*, 467 U.S. 340, 349 (1984). *Block* discussed congressional
inaction on the way to holding that courts could *not* review the challenged
agency action, and in any event, the Supreme Court has since expressed
considerable skepticism about this argument by acquiescence, regardless of
which direction it runs. See *Alexander v. Sandoval*, 532 U.S. 275, 292–93
(2001); *Central Bank of Denver, NA v. First Interstate Bank of Denver, NA*,
511 U.S. 164, 187 (1994).

informal and confidential process of conciliation when the statute does not require it.

The Second, Fifth, and Eleventh Circuits employ an even more searching three-part test first announced in *Marshall v. Sun Oil Co. (Delaware)*, 605 F.2d 1331, 1335 (5th Cir. 1979). This test asks whether the EEOC: (1) outlined to the employer its cause for believing Title VII has been violated, (2) gave the employer a chance to comply voluntarily, and (3) responded "in a reasonable and flexible manner to the reasonable attitudes of the employer." *Asplundh Tree*, 340 F.3d at 1259.

This inquiry—especially the open-ended third step—appears to be no clearer in practice than on paper. It invites ad hoc assessments of whether the EEOC played fairly and took reasonable substantive positions. See note 2, above, collecting cases. Under either test, court review will conflict directly with the statute's confidentiality provision, as well as with its grant of discretion to the agency to accept or reject any particular offer to compromise.

Finally, a word on remedies. Even if there were a sound basis for disregarding the confidentiality provision in Title VII and subjecting the EEOC's conciliation efforts to any form of judicial review, and even where the EEOC's conciliation effort has fallen short of judicial expectations, we see no sound basis for dismissing a case on the merits. Dismissal certainly is not required by the language of the statute, which says nothing to authorize judicial review in the first place and effectively prohibits it by making the relevant evidence inadmissible. See 42 U.S.C. § 2000e-5(b).

As a practical matter, there is little reason to expect the potential for dismissal to promote conciliation. The employer in a dismissed case has little incentive to resume talks, of course. The next employer the EEOC investigates will have seen the benefit of using the conciliation process as a strategic defense rather than a chance to settle. Dismissal also provides little additional deterrence against EEOC misconduct beyond what a stay or a referral to mediation could provide, and the significant social costs of allowing employment discrimination to go unaddressed in these situations are likely to outweigh any marginal gain in deterrence. Cf. *Hudson v. Michigan*, 547 U.S. 586, 594–96 (2006) (holding that violation of "knock-and-announce" rule under Fourth Amendment did not require suppression of evidence where deterrence benefits would be outweighed by substantial social costs).

Because all parties acknowledge that the statute grants the EEOC discretion to reject any particular settlement offer, Mach Mining must argue that its failure to conciliate defense is a claim solely about process and not substance. This distinction seems too fine a thread on which to hang judicial review. Cases applying both the tests for failure to conciliate slide easily from review of the form of conciliation toward more substantive scrutiny. Even setting aside this problem, the Supreme Court has made clear that, as a general rule, the remedy for a deficiency in a process is more process, not letting one party off the hook entirely. See, *e.g.*, *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) (citizens classified as "enemy combatants" were entitled to notice and hearing before neutral arbiter, but not to release from detention); *Vitek v. Jones*, 445 U.S. 480, 495–97 (1980) (prisoner was entitled to procedural safeguards before transfer

to mental hospital, but not to immunity from transfer); *Fuentes v. Shevin*, 407 U.S. 67, 96–97 (1972) (alleged debtors were entitled to hearing before prejudgment seizure of their property, but not to forgiveness of their debts).

The essence of an affirmative defense is that it assumes the plaintiff can prove its factual allegations. An affirmative defense raises additional facts or legal arguments that defeat liability nonetheless. See 2 Moore's Federal Practice 8.08[1] (3d ed. 2013); see also 5 Wright & Miller, Federal Practice and Procedure § 1271, at 585 (3d ed. 2004); *Sloan Valve Co. v. Zurn Industries, Inc.*, 712 F. Supp. 2d 743, 756 (N.D. Ill. 2010); *Menchaca v. American Medical Response of Illinois, Inc.*, 6 F. Supp. 2d 971, 972 (N.D. Ill. 1998). The wrong claimed by defendant here is purely one of insufficient process. A procedural remedy, such as a short stay to allow the parties to pursue conciliation further, would be tailored to the alleged wrong. Dismissal on the merits, however, would excuse the employer's (assumed) unlawful discrimination. That would be too final and drastic a remedy for any procedural deficiency in conciliation.

We need not say more about remedies because we hold that alleged failures by the EEOC in the conciliation process simply do not support an affirmative defense for employers charged with employment discrimination. If the EEOC has pled on the face of its complaint that it has complied with all procedures required under Title VII and the relevant documents are facially sufficient, see *EEOC v. Shell Oil Co.*, 466 U.S. 54, 81 (1984), our review of those procedures is satisfied. The EEOC is entitled to summary judgment on defendant Mach Mining's affirmative defense. The decision of the district court is

REVERSED and the case is REMANDED for further proceedings on the merits.