(Slip Opinion)     OCTOBER TERM, 2014                    1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MACH MINING, LLC *v.* EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 13–1019.   Argued January 13, 2015—Decided April 29, 2015

Before suing an employer for employment discrimination under Title VII of the Civil Rights Act of 1964, the Equal Employment Opportunity Commission (EEOC or Commission) must first "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."   42 U. S. C. §2000e–5(b).  Once the Commission determines that conciliation has failed, it may file suit in federal court.  §2000e–5(f)(1).   However, "[n]othing said or done during" conciliation may be "used as evidence in a subsequent proceeding without written consent of the persons concerned."  §2000e–5(b).

After investigating a sex discrimination charge against petitioner Mach Mining, LLC, respondent EEOC determined that reasonable cause existed to believe that the company had engaged in unlawful hiring practices.  The Commission sent a letter inviting Mach Mining and the complainant to participate in informal conciliation proceedings and notifying them that a representative would be contacting them to begin the process.  About a year later, the Commission sent Mach Mining another letter stating that it had determined that conciliation efforts had been unsuccessful.  The Commission then sued Mach Mining in federal court.  In its answer, Mach Mining alleged that the Commission had not attempted to conciliate in good faith. The Commission countered that its conciliation efforts were not subject to judicial review and that, regardless, the two letters it sent to Mach Mining provided adequate proof that it had fulfilled its statutory duty.  The District Court agreed that it could review the adequacy of the Commission's efforts, but granted the Commission leave to immediately appeal.  The Seventh Circuit reversed, holding that the

Commission's statutory conciliation obligation was unreviewable.

*Held*:

   1. Courts have authority to review whether the EEOC has fulfilled its Title VII duty to attempt conciliation.  This Court has recognized a "strong presumption" that Congress means to allow judicial review of administrative action.  *Bowen* v. *Michigan Academy of Family Physicians*, 476 U. S. 667, 670.  That presumption is rebuttable when a statute's language or structure demonstrates that Congress intended an agency to police itself.  *Block* v. *Community Nutrition Institute*, 467 U. S. 340, 349, 351.  But nothing rebuts that presumption here.

   By its choice of language, Congress imposed a mandatory duty on the EEOC to attempt conciliation and made that duty a precondition to filing a lawsuit.  Such compulsory prerequisites are routinely enforced by courts in Title VII litigation.  And though Congress gave the EEOC wide latitude to choose which "informal methods" to use, it did not deprive courts of judicially manageable criteria by which to review the conciliation process.  By its terms, the statutory obligation to attempt conciliation necessarily entails communication between the parties concerning the alleged unlawful employment practice.  The statute therefore requires the EEOC to notify the employer of the claim and give the employer an opportunity to discuss the matter.  In enforcing that statutory condition, a court applies a manageable standard.  Pp. 4–8.

   2. The appropriate scope of judicial review of the EEOC's conciliation activities is narrow, enforcing only the EEOC's statutory obligation to give the employer notice and an opportunity to achieve voluntary compliance.  This limited review respects the expansive discretion that Title VII gives the EEOC while still ensuring that it follows the law.

   The Government's suggestion that review be limited to checking the facial validity of its two letters to Mach Mining falls short of Title VII's demands.  That standard would merely accept the EEOC's word that it followed the law, whereas the aim of judicial review is to verify that the EEOC actually tried to conciliate a discrimination charge.  Citing the standard set out in the National Labor Relations Act, Mach Mining proposes review for whether the EEOC engaged in good-faith negotiation, laying out a number of specific requirements to implement that standard.  But the NLRA's process-based approach provides a poor analogy for Title VII, which ultimately cares about substantive outcomes and eschews any reciprocal duty to negotiate in good faith.  Mach Mining's proposed code of conduct also conflicts with the wide latitude Congress gave the Commission to decide how to conduct and when to end conciliation efforts.  And because information obtained during conciliation would be necessary evidence in a

good-faith determination proceeding, Mach Mining's brand of review would violate Title VII's confidentiality protections.

The proper scope of review thus matches the terms of Title VII's conciliation provision. In order to comply with that provision, the EEOC must inform the employer about the specific discrimination allegation. Such notice must describe what the employer has done and which employees (or class of employees) have suffered. And the EEOC must try to engage the employer in a discussion in order to give the employer a chance to remedy the allegedly discriminatory practice. A sworn affidavit from the EEOC stating that it has performed these obligations should suffice to show that it has met the conciliation requirement. Should the employer present concrete evidence that the EEOC did not provide the requisite information about the charge or attempt to engage in a discussion about conciliating the claim, a court must conduct the factfinding necessary to resolve that limited dispute. Should it find for the employer, the appropriate remedy is to order the EEOC to undertake the mandated conciliation efforts. Pp. 8–14.

738 F. 3d 171, vacated and remanded.

KAGAN, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notiy the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 13–1019

## MACH MINING, LLC, PETITIONER *v.* EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

[April 29, 2015]

JUSTICE KAGAN delivered the opinion of the Court.

Before suing an employer for discrimination, the Equal Employment Opportunity Commission (EEOC or Commission) must try to remedy unlawful workplace practices through informal methods of conciliation. This case requires us to decide whether and how courts may review those efforts. We hold that a court may review whether the EEOC satisfied its statutory obligation to attempt conciliation before filing suit. But we find that the scope of that review is narrow, thus recognizing the EEOC's extensive discretion to determine the kind and amount of communication with an employer appropriate in any given case.

I

Title VII of the Civil Rights Act of 1964, 78 Stat. 241, 42 U. S. C. §2000e *et seq.*, sets out a detailed, multi-step procedure through which the Commission enforces the statute's prohibition on employment discrimination. The process generally starts when "a person claiming to be aggrieved" files a charge of an unlawful workplace practice with the EEOC. §2000e–5(b). At that point, the EEOC

notifies the employer of the complaint and undertakes an investigation. See *ibid.* If the Commission finds no "reasonable cause" to think that the allegation has merit, it dismisses the charge and notifies the parties. *Ibid.* The complainant may then pursue her own lawsuit if she chooses. See §2000e–5(f)(1).

If, on the other hand, the Commission finds reasonable cause, it must first "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." §2000e–5(b). To ensure candor in those discussions, the statute limits the disclosure and use of the participants' statements: "Nothing said or done during and as a part of such informal endeavors" may be publicized by the Commission or "used as evidence in a subsequent proceeding without the written consent of the persons concerned." *Ibid.* The statute leaves to the EEOC the ultimate decision whether to accept a settlement or instead to bring a lawsuit. So long as "the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission" itself, the EEOC may sue the employer. §2000e–5(f)(1).

This case began when a woman filed a charge with the EEOC claiming that petitioner Mach Mining, LLC, had refused to hire her as a coal miner because of her sex. The Commission investigated the allegation and found reasonable cause to believe that Mach Mining had discriminated against the complainant, along with a class of women who had similarly applied for mining jobs. See App. 15. In a letter announcing that determination, the EEOC invited both the company and the complainant to participate in "informal methods" of dispute resolution, promising that a Commission representative would soon "contact [them] to begin the conciliation process." *Id.*, at 16. The record does not disclose what happened next. But about a year later, the Commission sent Mach Mining a second letter, stating

that "such conciliation efforts as are required by law have occurred and have been unsuccessful" and that any further efforts would be "futile." *Id.,* at 18–19.

The EEOC then sued Mach Mining in federal district court alleging sex discrimination in hiring. The Commission's complaint maintained that "[a]ll conditions precedent to the institution of this lawsuit"—including an attempt to end the challenged practice through conciliation—"ha[d] been fulfilled." *Id.,* at 22. In its answer, Mach Mining contested that statement, asserting that the EEOC had failed to "conciliat[e] in good faith" prior to filing suit. *Id.,* at 30.

The Commission subsequently moved for summary judgment on that issue, contending that its "conciliation efforts are not subject to judicial review." Motion for Summary Judgment in No. 3:11–cv–00879 (SD Ill.), p. 1. At most, the Commission argued, the court could inspect the EEOC's two letters to Mach Mining to confirm that the EEOC had met its duty to attempt conciliation. See *id.,* at 11, 19. Mach Mining responded by urging the court to consider the overall "reasonable[ness]" of the EEOC's efforts, based on evidence the company would present about the conciliation process. Memorandum in Opposition to Motion for Partial Summary Judgment in No. 3:11–cv–00879 (SD Ill.), p. 20. The trial court agreed with Mach Mining that it should review whether the Commission had made "a sincere and reasonable effort to negotiate." Civ. No. 11–879 (SD Ill., Jan. 28, 2013), App. to Pet. for Cert. 40a, 2013 WL 319337, *5 (internal quotation marks omitted). At the EEOC's request, the court then authorized an immediate appeal of its ruling. See Civ. No. 11–879 (SD Ill., May 20, 2013), App. to Pet. for Cert. 52a–55a, 2013 WL 2177770, *5–*6; 28 U. S. C. §1292(b).

The Court of Appeals for the Seventh Circuit reversed, holding that "the statutory directive to attempt conciliation" is "not subject to judicial review." 738 F. 3d 171, 177

(2013).   According to the court, that provision entrusts conciliation "solely to the EEOC's expert judgment" and thus provides no "workable standard" of review for courts to apply.  *Id.,* at 174, 177.  The Seventh Circuit further reasoned that judicial review of the conciliation process would "undermine enforcement of Title VII" by "protract[ing] and complicat[ing]" discrimination suits.  *Id.,* at 178–179 (quoting *Doe* v. *Oberweis Diary*, 456 F. 3d 704, 710 (CA7 2006)).   In its concluding paragraph, however, the court indicated that it had in fact subjected the EEOC's activities to a smidgen of review: Because the Commission "pled on the face of its complaint that it ha[d] complied with all" prerequisites to suit and because its two letters to Mach Mining were "facially sufficient" to show that conciliation had occurred, the court stated, "our review of [that process] is satisfied."  738 F. 3d, at 184.

Other Courts of Appeals have held that Title VII allows judicial review of the EEOC's conciliation efforts, but without agreeing on what that review entails.[1]  We granted certiorari, 573 U. S. ___ (2014), to address whether and to what extent such an attempt to conciliate is subject to judicial consideration.

## II

Congress rarely intends to prevent courts from enforcing its directives to federal agencies.  For that reason, this Court applies a "strong presumption" favoring judicial review of administrative action.  *Bowen* v. *Michigan Academy of Family Physicians*, 476 U. S. 667, 670 (1986).  That presumption is rebuttable: It fails when a statute's lan-

---

[1] See, *e.g., EEOC* v. *Asplundh Tree Expert Co.*, 340 F. 3d 1256, 1259 (CA11 2003) (holding that the EEOC must, among other things, "respond in a reasonable and flexible manner to the reasonable attitudes of the employer"); *EEOC* v. *Keco Industries, Inc.*, 748 F. 2d 1097, 1102 (CA6 1984) (holding that the EEOC must "make a good faith effort to conciliate").

guage or structure demonstrates that Congress wanted an agency to police its own conduct. See *Block* v. *Community Nutrition Institute*, 467 U. S. 340, 349, 351 (1984). But the agency bears a "heavy burden" in attempting to show that Congress "prohibit[ed] all judicial review" of the agency's compliance with a legislative mandate. *Dunlop* v. *Bachowski*, 421 U. S. 560, 567 (1975).

Title VII, as the Government acknowledges, imposes a duty on the EEOC to attempt conciliation of a discrimination charge prior to filing a lawsuit. See Brief for Respondent 20. That obligation is a key component of the statutory scheme. In pursuing the goal of "bring[ing] employment discrimination to an end," Congress chose "[c]ooperation and voluntary compliance" as its "preferred means." *Ford Motor Co.* v. *EEOC*, 458 U. S. 219, 228 (1982) (quoting *Alexander* v. *Gardner-Denver Co.*, 415 U. S. 36, 44 (1974)). Accordingly, the statute provides, as earlier noted, that the Commission "shall endeavor to eliminate [an] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." §2000e–5(b); see *supra,* at 2. That language is mandatory, not precatory. Cf. *National Railroad Passenger Corporation* v. *Morgan*, 536 U. S. 101, 109 (2002) (noting that the word "shall" admits of no discretion). And the duty it imposes serves as a necessary precondition to filing a lawsuit. Only if the Commission is "unable to secure" an acceptable conciliation agreement—that is, only if its attempt to conciliate has failed—may a claim against the employer go forward. §2000e–5(f)(1).

Courts routinely enforce such compulsory prerequisites to suit in Title VII litigation (and in many other contexts besides). An employee, for example, may bring a Title VII claim only if she has first filed a timely charge with the EEOC—and a court will usually dismiss a complaint for failure to do so. See, *e.g., id.,* at 104–105, 114–115. Similarly, an employee must obtain a right-to-sue letter before

bringing suit—and a court will typically insist on satisfaction of that condition. See, *e.g., McDonnell Douglas Corp.* v. *Green*, 411 U. S. 792, 798 (1973); see also, *e.g., Hallstrom* v. *Tillamook County*, 493 U. S. 20, 26 (1989) (upholding dismissal of an environmental suit for failure to comply with a notice provision serving as a "condition precedent"); *United States* v. *Zucca*, 351 U. S. 91 (1956) (affirming dismissal of a denaturalization suit because of the Government's failure to comply with a mandatory prerequisite). That ordinary part of Title VII litigation— see a prerequisite to suit, enforce a prerequisite to suit— supports judicial review of the EEOC's compliance with the law's conciliation provision.

The Government, reiterating the Seventh Circuit's view, contests that conclusion, arguing that Title VII provides "no standards by which to judge" the EEOC's performance of its statutory duty. Brief for Respondent 17. The Government highlights the broad leeway the statute gives the EEOC to decide how to engage in, and when to give up on, conciliation. In granting that discretion, the Government contends, Congress deprived courts of any "judicially manageable" criteria with which to review the EEOC's efforts. *Id.,* at 36 (quoting *Heckler* v. *Chaney*, 470 U. S. 821, 830 (1985)). And in that way Congress "demonstrate[d] [its] intention to preclude judicial review.*"* Brief for Respondent 39.

But in thus denying that Title VII creates a "reviewable prerequisite to suit," the Government takes its observation about discretion too far. *Id.,* at 37 (quoting 738 F. 3d, at 175). Yes, the statute provides the EEOC with wide latitude over the conciliation process, and that feature becomes significant when we turn to defining the proper scope of judicial review. See *infra*, at 10–11. But no, Congress has not left *everything* to the Commission. Consider if the EEOC declined to make any attempt to conciliate a claim—if, after finding reasonable cause to

support a charge, the EEOC took the employer straight to court. In such a case, Title VII would offer a perfectly serviceable standard for judicial review: Without any "endeavor" at all, the EEOC would have failed to satisfy a necessary condition of litigation.

Still more, the statute provides certain concrete standards pertaining to what that endeavor must entail. Again, think of how the statute describes the obligatory attempt: "to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." §2000e–5(b). Those specified methods necessarily involve communication between parties, including the exchange of information and views. As one dictionary variously defines the terms, they involve "consultation or discussion," an attempt to "reconcile" different positions, and a "means of argument, reasoning, or entreaty." American Heritage Dictionary 385, 382, 1318 (5th ed. 2011). That communication, moreover, concerns a particular thing: the "alleged unlawful employment practice." So the EEOC, to meet the statutory condition, must tell the employer about the claim—essentially, what practice has harmed which person or class—and must provide the employer with an opportunity to discuss the matter in an effort to achieve voluntary compliance. See also *infra*, at 13. If the Commission does not take those specified actions, it has not satisfied Title VII's requirement to attempt conciliation. And in insisting that the Commission do so, as the statutory language directs, a court applies a manageable standard.

Absent such review, the Commission's compliance with the law would rest in the Commission's hands alone. We need not doubt the EEOC's trustworthiness, or its fidelity to law, to shy away from that result. We need only know—and know that Congress knows—that legal lapses and violations occur, and especially so when they have no consequence. That is why this Court has so long applied a

strong presumption favoring judicial review of administrative action. See *supra,* at 4–5. Nothing overcomes that presumption with respect to the EEOC's duty to attempt conciliation of employment discrimination claims.

## III

That conclusion raises a second dispute between the parties: What is the proper scope of judicial review of the EEOC's conciliation activities? The Government (once having accepted the necessity for some review) proposes that courts rely solely on facial examination of certain EEOC documents. Mach Mining argues for far more intrusive review, in part analogizing to the way judges superintend bargaining between employers and unions. We accept neither suggestion, because we think neither consistent with the choices Congress made in enacting Title VII. The appropriate scope of review enforces the statute's requirements as just described—in brief, that the EEOC afford the employer a chance to discuss and rectify a specified discriminatory practice—but goes no further. See *supra,* at 7; *infra*, at 13. Such limited review respects the expansive discretion that Title VII gives to the EEOC over the conciliation process, while still ensuring that the Commission follows the law.

The Government argues for the most minimalist form of review imaginable. Echoing the final paragraph of the decision below, the Government observes that the EEOC, in line with its standard practice, wrote two letters to Mach Mining. See *supra,* at 2–3, 4. The first, after announcing the Commission's finding of reasonable cause, informed the company that "[a] representative of this office will be in contact with each party in the near future to begin the conciliation process." App. 16. The second, sent about a year later, stated that the legally mandated conciliation attempt had "occurred" and failed. *Id.,* at 18. According to the Government, those "bookend" letters are

all a court ever needs for review, because they "establish" that the EEOC met its obligation to attempt conciliation. Brief for Respondent 21.

But review of that kind falls short of what Title VII demands because the EEOC's bookend letters fail to prove what the Government claims. Contrary to its intimation, those letters do not themselves fulfill the conciliation condition: The first declares only that the process will start soon, and the second only that it has concluded. The two letters, to be sure, may provide indirect evidence that conciliation efforts happened in the interim; the later one expressly represents as much. But suppose an employer contests that statement. Let us say the employer files an affidavit alleging that although the EEOC promised to make contact, it in fact did not. In that circumstance, to treat the letters as sufficient—to take them at face value, as the Government wants—is simply to accept the EEOC's say-so that it complied with the law. And as earlier explained, the point of judicial review is instead to *verify* the EEOC's say-so—that is, to determine that the EEOC actually, and not just purportedly, tried to conciliate a discrimination charge. See *supra,* at 7–8. For that, a court needs more than the two bookend letters the Government proffers.

Mach Mining, for its part, would have a court do a deep dive into the conciliation process. Citing the standard set out in the National Labor Relations Act (NLRA), Mach Mining wants a court to consider whether the EEOC has "negotiate[d] in good faith" over a discrimination claim. Brief for Petitioner 37; see 29 U. S. C. §158(d) (imposing a duty on employers and unions to bargain "in good faith with respect to . . . terms and conditions of employment"). That good-faith obligation, Mach Mining maintains, here incorporates a number of specific requirements. In every case, the EEOC must let the employer know the "minimum . . . it would take to resolve" the claim—that is, the

smallest remedial award the EEOC would accept. Tr. of Oral Arg. 63. The Commission must also lay out "the factual and legal basis for" all its positions, including the calculations underlying any monetary request. Brief for Petitioner 39. And the Commission must refrain from making "take-it-or-leave-it" offers; rather, the EEOC has to go back and forth with the employer, considering and addressing its various counter-offers and giving it sufficient time at each turn "to review and respond." *Id.,* at 40. The function of judicial review, Mach Mining concludes, is to compel the Commission to abide by these rules.

To begin, however, we reject any analogy between the NLRA and Title VII. The NLRA is about process and process alone. It creates a sphere of bargaining—in which both sides have a mutual obligation to deal fairly— without expressing any preference as to the substantive agreements the parties should reach. See §§151, 158(d). By contrast, Title VII ultimately cares about substantive results, while eschewing any reciprocal duties of good-faith negotiation. Its conciliation provision explicitly serves a substantive mission: to "eliminate" unlawful discrimination from the workplace. 42 U. S. C. §2000e–5(b). In discussing a claim with an employer, the EEOC must always insist upon legal compliance; and the employer, for its part, has no duty at all to confer or exchange proposals, but only to refrain from any discrimination. Those differences make judicial review of the NLRA's duty of good-faith bargaining a poor model for review of Title VII's conciliation requirement. In addressing labor disputes, courts have devised a detailed body of rules to police good-faith dealing divorced from outcomes—and so to protect the NLRA's core procedural apparatus. But those kinds of rules do not properly apply to a law that treats the conciliation process not as an end in itself, but only as a tool to redress workplace discrimination.

More concretely, Mach Mining's proposed code of con-

duct conflicts with the latitude Title VII gives the Commission to pursue voluntary compliance with the law's commands. Every aspect of Title VII's conciliation provision smacks of flexibility. To begin with, the EEOC need only "endeavor" to conciliate a claim, without having to devote a set amount of time or resources to that project. §2000e–5(b). Further, the attempt need not involve any specific steps or measures; rather, the Commission may use in each case whatever "informal" means of "conference, conciliation, and persuasion" it deems appropriate. *Ibid.* And the EEOC alone decides whether in the end to make an agreement or resort to litigation: The Commission may sue whenever "unable to secure" terms "acceptable *to the Commission.*" §2000e–5(f)(1) (emphasis added). All that leeway respecting how to seek voluntary compliance and when to quit the effort is at odds with Mach Mining's bargaining checklist. Congress left to the EEOC such strategic decisions as whether to make a bare-minimum offer, to lay all its cards on the table, or to respond to each of an employer's counter-offers, however far afield. So too Congress granted the EEOC discretion over the pace and duration of conciliation efforts, the plasticity or firmness of its negotiating positions, and the content of its demands for relief. For a court to assess any of those choices—as Mach Mining urges and many courts have done, see n. 1, *supra*—is not to enforce the law Congress wrote, but to impose extra procedural requirements. Such judicial review extends too far.

Mach Mining's brand of review would also flout Title VII's protection of the confidentiality of conciliation efforts. The statute, recall, provides that "[n]othing said or done during and as a part of such informal endeavors may be made public by the Commission . . . or used as evidence in a subsequent proceeding without the written consent of the persons concerned"—both the employer and the complainant. §2000e–5(b); see *EEOC* v. *Associated Dry Goods*

*Corp.*, 449 U. S. 590, 598, and n. 13 (1981). But the judicial inquiry Mach Mining proposes would *necessitate* the disclosure and use of such information in a later Title VII suit: How else could a court address an allegation that the EEOC failed to comply with all the negotiating rules Mach Mining espouses?[2] The proof is in this very case: The District Court held that it could not strike from the record descriptions of the conciliation process because they spoke to whether the EEOC had made a "sincere and reasonable effort to negotiate." App. to Pet. for Cert. 40a (internal quotation marks omitted); see *supra,* at 3. The court thus failed to give effect to the law's non-disclosure provision. And in so doing, the court undermined the conciliation process itself, because confidentiality promotes candor in discussions and thereby enhances the prospects for agreement. As this Court has explained, "[t]he maximum results from the voluntary approach will be achieved if" the parties know that statements they make cannot come

---

[2] Mach Mining tries to show that broad judicial review is compatible with Title VII's non-disclosure provision, but fails to do so. The company first contends that the statutory bar is limited to "using what was said or done in a conciliation as evidence *going to the merits of the claims*." Brief for Petitioner 27 (emphasis added). But to make that argument, Mach Mining must add many words to the text (those shown here in italics). The actual language refers to "evidence in a subsequent proceeding," without carving out evidence relating to non-merits issues. 42 U. S. C. §2000e–5(b). And in any case, under Mach Mining's own view of Title VII, compliance with the conciliation mandate *is* a merits issue, because it is a necessary "element of the [EEOC's] claim, which the [EEOC] must plead and prove." Brief for Petitioner 9; see *id.,* at 31. Mach Mining therefore presents a back-up argument: "[T]he confidentiality limitation should be deemed waived" when the employer puts conciliation at issue. *Id.,* at 30. But again, to effect a waiver Title VII requires "the written consent of the persons concerned," which includes not just the employer but the complainant too. §2000e–5(b); see *supra,* at 11. And the *employer*'s decision to contest the EEOC's conciliation efforts cannot waive, by "deem[ing]" or otherwise, the *employee*'s statutory rights.

back to haunt them in litigation. *Associated Dry Goods Corp.*, 449 U. S., at 599, n. 16 (quoting 110 Cong. Rec. 8193 (1964) (remarks of Sen. Dirksen)). And conversely, the minimum results will be achieved if a party can hope to use accounts of those discussions to derail or delay a meritorious claim.

By contrast with these flawed proposals, the proper scope of judicial review matches the terms of Title VII's conciliation provision, as we earlier described them. See *supra,* at 7. The statute demands, once again, that the EEOC communicate in some way (through "conference, conciliation, and persuasion") about an "alleged unlawful employment practice" in an "endeavor" to achieve an employer's voluntary compliance. §2000e–5(b). That means the EEOC must inform the employer about the specific allegation, as the Commission typically does in a letter announcing its determination of "reasonable cause." *Ibid.* Such notice properly describes both what the employer has done and which employees (or what class of employees) have suffered as a result. And the EEOC must try to engage the employer in some form of discussion (whether written or oral), so as to give the employer an opportunity to remedy the allegedly discriminatory practice. Judicial review of those requirements (and nothing else) ensures that the Commission complies with the statute. At the same time, that relatively barebones review allows the EEOC to exercise all the expansive discretion Title VII gives it to decide how to conduct conciliation efforts and when to end them. And such review can occur consistent with the statute's non-disclosure provision, because a court looks only to whether the EEOC attempted to confer about a charge, and not to what happened (*i.e.,* statements made or positions taken) during those discussions.

A sworn affidavit from the EEOC stating that it has performed the obligations noted above but that its efforts

have failed will usually suffice to show that it has met the conciliation requirement. Cf. *United States* v. *Clarke*, 573 U. S. ___, ___ (2014) (slip op., at 6) ("[A]bsent contrary evidence, the [agency] can satisfy [the relevant] standard by submitting a simple affidavit from" the agency representative involved). If, however, the employer provides credible evidence of its own, in the form of an affidavit or otherwise, indicating that the EEOC did not provide the requisite information about the charge or attempt to engage in a discussion about conciliating the claim, a court must conduct the factfinding necessary to decide that limited dispute. Cf. *id.,* at ___–___ (slip op., at 6–7). Should the court find in favor of the employer, the appropriate remedy is to order the EEOC to undertake the mandated efforts to obtain voluntary compliance. See §2000e–5(f)(1) (authorizing a stay of a Title VII action for that purpose).

## IV

Judicial review of administrative action is the norm in our legal system, and nothing in Title VII withdraws the courts' authority to determine whether the EEOC has fulfilled its duty to attempt conciliation of claims. But the scope of that review is narrow, reflecting the abundant discretion the law gives the EEOC to decide the kind and extent of discussions appropriate in a given case. In addressing a claim like Mach Mining's, courts may not impinge on that latitude and on the Commission's concomitant responsibility to eliminate unlawful workplace discrimination.

For the reasons stated, we vacate the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*