NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CLICK-TO-CALL TECHNOLOGIES, LP,**
*Appellant*

**v.**

**ORACLE CORPORATION, ORACLE OTC SUBSIDIARY, LLC, INGENIO, INC., YELLOWPAGES.COM, LLC,**
*Appellees*

---

2015-1242

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-00312.

---

Decided: November 17, 2016

---

PETER J. AYERS, Lee & Hayes, PLLC, Austin, TX, for appellant. Also represented by REID G. JOHNSON, Spokane, WA.

MARK D. FOWLER, DLA Piper US LLP, East Palo Alto, CA, for appellees Oracle Corporation, Oracle OTC Subsidiary, LLC. Also represented by STANLEY JOSEPH

PANIKOWSKI, III, San Diego, CA; JOHN GUARAGNA, Austin, TX; JAMES M. HEINTZ, Reston, VA.

MITCHELL G. STOCKWELL, Kilpatrick Townsend & Stockton LLP, Atlanta, GA, for appellees Ingenio, Inc., Yellowpages.com, LLC. Also represented by DAVID CLAY HOLLOWAY.

NATHAN K. KELLEY, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for intervenor Michelle K. Lee. Also represented by MARY L. KELLY, THOMAS W. KRAUSE, SCOTT WEIDENFELLER.

---

Before O'MALLEY and TARANTO, *Circuit Judges,* and STARK, *District Judge.*[*]

Opinion for the court filed PER CURIAM.

Concurring opinion filed by *Circuit Judge* O'MALLEY.

Concurring opinion filed by *Circuit Judge* TARANTO.

PER CURIAM.

This case returns to us from the Supreme Court, which granted certiorari, vacated our previous judgment, and remanded for further consideration in light of *Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 2131 (2016). Because we are bound by intervening precedent from this court to do so, we reinstate our earlier judgment and dismiss the appeal filed by Click-to-Call Technologies ("CTC") in this matter.

On November 25, 2014, CTC appealed from a final written decision of the Patent Trial and Appeal Board

---

[*] The Honorable Leonard P. Stark, Chief District Judge, United States District Court for the District of Delaware, sitting by designation.

("the Board") on patentability in an inter partes review ("IPR") proceeding. *See Oracle Corp. v. Click-to-Call Techs., LP*, No. IPR2013-00312, 2014 Pat. App. LEXIS 8333 (P.T.A.B. Oct. 28, 2014). Specifically, CTC argued that the IPR proceedings should have been barred by 35 U.S.C. § 315(b), which provides that an "inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner . . . is served with a complaint alleging infringement of the patent." 35 U.S.C. § 315(b). Prior to the Supreme Court's decision in *Cuozzo*, we dismissed CTC's appeal for lack of jurisdiction. *Click-To-Call Techs., LP v. Oracle Corp.*, 622 F. App'x 907 (Fed. Cir. 2015). We did so in light of this court's previous decision in *Achates Reference Publishing, Inc. v. Apple Inc.*, 803 F.3d 652 (Fed. Cir. 2015), where we held that a party cannot challenge the Board's decision to institute an IPR proceeding under § 315(b) because 35 U.S.C. § 314(d) "prohibits this court from reviewing the Board's determination to initiate IPR proceedings based on its assessment of the time-bar of § 315(b), even if such assessment is reconsidered during the merits phase of proceedings and restated as part of the Board's final written decision." *Click-To-Call*, 622 F. App'x at 908 (quoting *Achates*, 803 F.3d at 658).

After the Supreme Court granted CTC's petition for certiorari, vacated our decision, and remanded the case, we ordered supplemental briefing to address the impact of *Cuozzo* on the continuing viability of our decision in *Achates* and, hence, in this matter. In its supplemental brief, CTC argues that *Cuozzo* requires this court to reconsider our holding in *Achates*. CTC asserts that *Cuozzo* limits § 314(d) to challenges that are "closely related" to the Board's substantive patentability determination under § 314(a). According to CTC, the Supreme Court implicitly overruled our holding in *Achates* because the time bar under § 315(b) is not closely related to the

Board's decision to institute under § 314(a). *Cf. Wi-Fi One, LLC v. Broadcom Corp.*, No. 15-1944, 2016 U.S. App. LEXIS 16942, at *26 (Fed. Cir. Sept. 16, 2016) (Reyna, J., concurring) ("The time-bar question is not a 'mine-run' claim, and it is not a mere technicality related only to a preliminary decision concerning the sufficiency of the grounds that are pleaded in the petition."). CTC also argues that § 315(b) provides an independent jurisdictional limitation on the Board that goes beyond the scope of § 314(d). *Cf. id.* ("[T]he time bar deprives the Board of jurisdiction to consider whether to institute a review . . . .").

Oracle Corp. ("Oracle") and the United States Patent and Trademark Office ("PTO") both argue that the Supreme Court's analysis in *Cuozzo* not only did not overrule *Achates*, but supports our holding in *Achates*. They argue that the Supreme Court's determination that § 314(d) precludes review of an institution decision where the grounds for attacking the decision to institute are questions closely tied to those statutes authorizing the PTO to act mandates application of § 314(d) to a time-bar challenge brought under § 315(b). Oracle points to Justice Alito's separate opinion in *Cuozzo*, concurring in part and dissenting in part, as support for its view of the majority's reasoning. In that opinion, Justice Alito complains that "the petition's timeliness, no less than the particularity of its allegations, is closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate . . . review, and the Court says that such questions are unreviewable." *Cuozzo*, 136 S. Ct. at 2155 (Alito, J., concurring in part and dissenting in part) (internal quotations omitted).

After the parties submitted supplemental briefing in this case, we issued our decision in *Wi-Fi One*, which directly considers whether *Achates* remains good law after *Cuozzo*. In *Wi-Fi One*, a majority of the panel determined that the Supreme Court's decision in *Cuozzo* did not

overrule our previous decision in *Achates* and that later panels of the court remain bound by *Achates*. *See Wi-Fi One*, 2016 U.S. App. LEXIS 16942, at *9-12. The majority concluded, moreover, that "[n]othing in *Cuozzo* casts doubt" on the interpretation of the statute we relied upon in *Achates*. *Id.* at *11.[1]

In deciding this case, we are bound by this court's precedent in *Wi-Fi One* and, hence, in *Achates*. We therefore once more dismiss CTC's appeal for lack of jurisdiction. Because we are bound by the holdings of *Wi-Fi One* and *Achates* as to the scope of § 314(d), we do not address the parties' arguments as to whether any error by the PTO in its institution decision is harmless based on the presence of other parties to whom the § 315(b) time bar would not apply.

**DISMISSED**

---

[1]   As noted above, Judge Reyna dissented from that aspect of the court's decision.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**CLICK-TO-CALL TECHNOLOGIES, LP,**
*Appellant*

**v.**

**ORACLE CORPORATION, ORACLE OTC SUBSIDIARY, LLC, INGENIO, INC., YELLOWPAGES.COM, LLC,**
*Appellees*

———————————

2015-1242

———————————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-00312.

———————————

O'MALLEY, *Circuit Judge*, concurring.

As explained in the court's opinion, our previous holding in *Achates Reference Publishing, Inc. v. Apple Inc.*, 803 F.3d 652 (Fed. Cir. 2015), determined that a party cannot challenge the Board's decision to institute an IPR proceeding under § 315(b) because of the bar on judicial review of institution decisions in § 314(d). Since the Supreme Court's decision in *Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 2131 (2016), this court has reaffirmed that *Achates* remains good law. *Wi-Fi One, LLC v. Broadcom Corp.*, No. 15-1944, 2016 U.S. App. LEXIS 16942 (Fed.

Cir. Sept. 16, 2016). Because we are bound by the court's previous decisions in *Achates* and *Wi-Fi One*, I agree with the court's dismissal of Click-to-Call's ("CTC") challenge under § 315(b). I write separately, however, to note that I believe the Supreme Court's language in *Cuozzo* leaves room for us to question our reasoning in *Achates* and to suggest that we do so en banc.

In explaining the scope of its opinion in *Cuozzo*, the Supreme Court clarified that, "contrary to the dissent's suggestion, we do not categorically preclude review of a final decision where a petition fails to give 'sufficient notice' such that there is a due process problem with the entire proceeding, nor does our interpretation enable the agency to act outside its statutory limits . . . ." *Cuozzo*, 136 S. Ct. at 2141. The Supreme Court then provided the specific example of the Board addressing a claim's definiteness under § 112 during an IPR proceeding despite Congress only authorizing the Board to consider challenges under §§ 102–03. *Id.* at 2141–42. We could apply the same reasoning to the Board's institution of an IPR proceeding contrary to the direct statutory command that "[a]n inter partes review *may not be instituted* if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner . . . is served with a complaint alleging infringement of the patent." 35 U.S.C. § 315(b) (emphasis added). As the Supreme Court noted in its opinion, "[s]uch 'shenanigans' may be properly reviewable in the context of § 319 and under the Administrative Procedure Act, which enables reviewing courts to 'set aside agency action' that is . . . 'in excess of statutory jurisdiction.'" *Cuozzo*, 136 S. Ct. at 2142 (quoting 5 U.S.C. § 706(2)(A)–(D)).

The Supreme Court also stated that its "conclusion that courts may not revisit this initial determination gives effect to th[e] statutory command" of § 314(d). *Cuozzo*, 136 S. Ct. at 2141. To the extent the Supreme Court sought in *Cuozzo* to give effect to the statutory

commands of Congress, permitting review of challenges brought under § 315(b) similarly would give effect to the statutory command that IPR proceedings "may not be instituted" when a petitioner files an untimely petition. *See* 35 U.S.C. § 315(b).  It would also give effect to the statutory command that reviewing courts shall "set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  *See* 5 U.S.C. § 706(2)(C).

This reasoning and the plain language of the statute contradict a key underpinning of our reasoning in *Achates*.  In *Achates*, we stated that "the § 315(b) time bar does not impact the Board's authority to invalidate a patent claim—it only bars particular petitioners from challenging the claim."  803 F.3d at 657.  Although § 315(b) does not prevent another petitioner that is not time-barred from bringing a later challenge to the patent, the statute, as written, does not address who may bring a petition; Congress did not address the statute to petitioners or the identity of petitioners.  Instead, the statute is addressed to the PTO and provides that "[a]n inter partes review *may not be instituted* if the petition requesting the proceeding" is time-barred under the requirements of the statute.  35 U.S.C. § 315(b) (emphasis added).  As we explained in *Intellectual Ventures II LLC v. JPMorgan Chase & Co.*, 781 F.3d 1372 (Fed. Cir. 2015), in the context of assessing when we may exercise jurisdiction over an appeal from institution decisions regarding covered business method patents ("CBMs"), Congress consistently differentiated between petitions to institute and the act of institution in the AIA.  *Id.* at 1376.  The former is what a party seeking to challenge a patent in a CBM proceeding, a derivation proceeding, a post-grant proceeding, or an IPR does—and of which the PTO reviews the sufficiency— and the latter is what the Director of the PTO is authorized to do.  *Id.*  Because only the Director or her delegees may "institute" a proceeding, § 315(b)'s bar on institution

is necessarily directed to the PTO, not those filing a petition to institute.  *See id.*

If the PTO exceeds its statutory authority by instituting an IPR proceeding under circumstances contrary to the language of § 315(b), then our court, sitting in its proper role as an appellate court, should review those determinations as *Cuozzo* suggests.  *See Cuozzo*, 136 S. Ct. at 2141–42; 5 U.S.C. § 706(2)(C).  Indeed, the court should address such actions in order to give effect to the limitations on the PTO's statutory authority to institute proceedings expressly set forth in § 315(b).  *See Cuozzo*, 136 S. Ct. at 2141.

The PTO's own regulations support this reading of § 315(b); they clearly consider the possibility that the Board might mistakenly take actions in excess of its statutory jurisdiction.  For example, Part 42 of Title 37 in the Code of Federal Regulations "governs proceedings before the Patent Trial and Appeal Board."  37 C.F.R. § 42.1(a) (2016).  In addressing "Jurisdiction" for these proceedings, Part 42 expressly requires that "[a] petition to institute a trial must be filed with the Board consistent with any time period required by statute."  *Id.* § 42.3(b); *see also id.* § 42.2 (identifying IPR proceedings as falling within the definition of "trial").  A straightforward reading of these regulations indicates that the PTO believed at the time it issued those regulations that it would not have statutory jurisdiction or authority to institute proceedings—including IPRs—in response to petitions to institute filed outside the time limit set by statute for such filings.  As *Cuozzo* indicated, such a decision would be reviewable under the Administrative Procedure Act.  *Cuozzo*, 136 S. Ct. at 2142; *see also* 5 U.S.C. § 706(2)(C).

The policy underlying the Supreme Court's reasoning in *Cuozzo* also indicates that courts should review institution decisions when the petition is not timely filed under § 315(b).  In *Cuozzo*, the Supreme Court acknowledged

the "strong presumption" in favor of judicial review when interpreting statutes. 136 S. Ct. at 2140 (citing *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1650 (2015)). The Supreme Court explained that Congress can only overcome this presumption through "clear and convincing indications" that are "drawn from specific language, specific legislative history, and inferences of intent drawn from the statutory scheme as a whole." *Id.* (internal quotation marks omitted) (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349–50 (1984)). The Supreme Court determined that Congress provided clear and convincing evidence in § 314(d) that it intended to bar review of *certain* institution decisions. The Supreme Court then held that Cuozzo's challenge under § 312 is barred by the scope of § 314(d) because "Cuozzo's claim that Garmin's petition was not pleaded 'with particularity' under § 312 is little more than a challenge to the Patent Office's conclusion, under § 314(a), that the 'information presented in the petition' warranted review." *Id.* at 2142.

This reasoning does not translate to the text of § 315(b), however. Neither the challenge in *Wi-Fi One, LLC v. Broadcom Corp.*, No. 15-1944, 2016 U.S. App. LEXIS 16942 (Fed. Cir. Sept. 16, 2016), nor the challenge here relates to whether the information presented in the petition warrants review; they instead challenge the fundamental statutory basis on which Congress has authorized the Director to institute an IPR proceeding. *See* 35 U.S.C. § 315(b) ("An inter partes review *may not be instituted* if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner . . . is served with a complaint alleging infringement of the patent." (emphasis added)). The "strong presumption" in favor of judicial review encourages the review of such questions.

To be clear, the Supreme Court in *Cuozzo* did not expressly state whether the scope of § 314(d) applies to the

time bar of § 315(b).  And I agree with my colleagues in *Wi-Fi One* that *Cuozzo* did not overrule *Achates*.  But the Supreme Court explicitly left open the possibility that the AIA might allow for challenges to certain Board decisions to institute an IPR proceeding.  *Cuozzo*, 136 S. Ct. at 2141–42.  Although the Supreme Court did not decide the effect of § 314(d) on the precise challenge at issue here, it referred to potentially viable constitutional challenges and challenges based on decisions which exceed the PTO's statutory authority.  *Id.*  Indeed, as noted above, the Supreme Court rejected the dissent's view of the scope of the majority opinion—where Justice Alito expressed concern that timeliness challenges would become unreviewable under the majority's reasoning—and explained that the Court's holding "do[es] not categorically preclude review of a final decision" in at least some circumstances.  *Id.* at 2141.

For these reasons, like Judge Taranto, I believe that this court, sitting en banc in an appropriate case, should reconsider *Achates*.  I suggest we collectively assess whether our reasoning in *Achates* comports with the precise language in the statutory provision it analyzes and should remain the law by which we are governed.  Because this court's precedent in *Wi-Fi One* and *Achates* remain binding law on this panel at this time, I concur in the judgment we enter today.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**CLICK-TO-CALL TECHNOLOGIES, LP,**
*Appellant*

**v.**

**ORACLE CORPORATION, ORACLE OTC SUBSIDIARY, LLC, INGENIO, INC., YELLOWPAGES.COM, LLC,**
*Appellees*

_____

2015-1242

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2013-00312.

_____

TARANTO, *Circuit Judge*, concurring.

In this case, a panel of the Patent Trial and Appeal Board, acting as delegee of the Director of the Patent and Trademark Office under 37 C.F.R. §§ 42.4, 42.108, instituted an inter partes review (IPR) under 35 U.S.C. ch. 31, at the behest of Oracle, of certain claims of Click-to-Call's U.S. Patent No. 5,818,836. In instituting the review, the Board concluded that institution was not barred by 35 U.S.C. § 315(b), which prohibits institution if more than a year has elapsed since certain infringement complaints

involving the patent at issue were served. In Click-to-Call's appeal of a final written decision cancelling certain claims of the '836 patent, the reviewability of the Board's § 315(b) determination is now back before us on remand from the Supreme Court. *Click-to-Call Techs., LP v. Oracle Corp.*, 136 S. Ct. 2508 (2016).

Under binding precedent of this court, we may not review that determination. In *Achates Reference Publishing, Inc. v. Apple Inc.*, 803 F.3d 652, 658 (Fed. Cir. 2015), this court held that 35 U.S.C. § 314(d) precludes judicial review, even in an appeal of a final written decision cancelling patent claims in an IPR, of the PTO's determination that institution of the IPR comports with the one-year rule of § 315(b). *Achates* remains binding. Whatever effect the Supreme Court's decision in *Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 2131 (2016), would have on a fresh analysis of the *Achates* issue, a high standard must be met in order for one panel to conclude that an earlier, otherwise-binding panel decision has been superseded by an intervening Supreme Court decision. As this court held in *Wi-Fi One, LLC v. Broadcom Corp.*, 837 F.3d 1329 (Fed. Cir. 2016), the decision in *Cuozzo* does not meet that standard for the *Achates* issue.

The en banc court, however, would not be bound by *Achates* and could consider the issue afresh in light of *Cuozzo*. It appears to me that en banc consideration is warranted. I elaborate on my current thinking to complement Judge O'Malley's analysis in her concurrence.

The specific issue is whether, in a patent owner's appeal of a final written decision cancelling some claims of its patent, § 314(d) prohibits this court from reviewing the PTO's determination that the petition satisfies § 315(b)'s

timeliness rule.[1] The reviewability provision, § 314(d), states: "The determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable." The timeliness provision, § 315(b), states: "An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent."

As *Cuozzo* confirms, the question of reviewability must be answered against the background of an important default rule providing for judicial review of agencies' affirmative exercises of power concretely harming the person seeking review. 136 S. Ct. at 2140. Under that rule, a high standard of clarity must be met before a court may conclude that Congress has barred judicial review of determinations underlying such agency exercises of power even after the agency action has become final. *Mach Mining, LLC v. Equal Emp't Opportunity Comm'n*, 135 S. Ct. 1645, 1651 (2015); *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670–72 (1986). Where that

---

[1] We may consider the issue of § 314(d)'s meaning solely as to Board decisions to institute, putting aside Board decisions *not* to institute. In *Cuozzo*, as an important part of its rationale for reading § 314(d) to bar review even after a final written decision, the Supreme Court declared: "[T]he agency's decision to *deny* a petition is a matter committed to the Patent Office's discretion. See [5 U.S.C.] § 701(a)(2); 35 U.S.C. § 314(a) (no mandate to institute review)." 136 S. Ct. at 2140 (emphasis added). As to *non*institution decisions, the Court explained, § 314(d) "would seem superfluous." *Id.* Under that reasoning, § 314(d) need not be invoked to conclude that a denial of a petition is unreviewable; the provision's interpretation seems to matter only as to decisions *to* institute.

standard is not met, the background reviewability rule supplies the rule of decision, confirming reviewability. And like other important structural background rules, such as those concerning extraterritoriality and sovereign immunity, the rule of decision favoring reviewability (where a clear contrary showing is not made) should apply in determining the *scope* of any statutory provision asserted to create an exception, not just in determining whether the provision is an exception at all. *See Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 265 (2010) (extraterritoriality); *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 455–56 (2007) (extraterritoriality); *Sossamon v. Texas*, 563 U.S. 277, 285 (2011) (sovereign immunity); *Lane v. Pena*, 518 U.S. 187, 192 (1996) (sovereign immunity); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) (sovereign immunity).

Within that framework, the Supreme Court in *Cuozzo* made two things clear, while leaving others less clear. The first clear ruling is that § 314(d) bars review of certain institution determinations even after the Board has rendered a final written decision cancelling patent claims. The provision does not bar only interlocutory review, which, the Court explained, would already be rendered unavailable by the Administrative Procedure Act, 5 U.S.C. § 704. *See* 136 S. Ct. at 2140. The second clear ruling is that the specific PTO determination involved in the *Cuozzo* case is within the § 314(d) bar. The PTO's determination in *Cuozzo* was that the petition seeking institution of an IPR complied with § 312(a)(3), which imposes a pleading requirement—that the petition must identify, "in writing and with particularity, each claim challenged, [and] the grounds on which the challenge to each claim is based." 35 U.S.C. § 312(a)(3). Beyond that, however, the Court in *Cuozzo* left the scope of § 314(d)'s bar less than clear.

It is notable, to begin with, that the Court pointedly avoided embracing the simplest and most review-barring reading of § 314(d)—namely, that it prohibits judicial review of *any* determination to institute an IPR. Instead, in ruling that § 314(d) bars review of a § 312(a)(3) determination, the Court both emphasized the particular PTO determination before it and gave various indications that any unreviewability conclusion depends on what particular PTO determination is at issue. 136 S. Ct. at 2139 (referring to "this kind of legal question and little more"); *id.* at 2140 (referring to "minor statutory technicality"); *id.* at 2141 (distinguishing "questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review" from "constitutional questions," "other less closely related statutes," and "questions of interpretation that reach, in terms of scope and impact, well beyond" § 314); *id.* at 2141–42 (not barring review of an agency's decision "to act outside its statutory limits by, for example, canceling a patent claim for 'indefiniteness under § 112' in inter partes review"); *id.* at 2142 (concluding that "§ 314(d) bars Cuozzo's efforts to attack the Patent Office's determination to institute inter partes review *in this case*" (emphasis added)).

Such issue dependence has a foundation in the language of § 314(d), which refers to a "determination . . . whether to institute an IPR *under this section*" (emphasis added). As a textual matter, those words clearly encompass the "reasonable likelihood" determination specified in § 314(a), but they leave unclear to what extent they reach determinations of compliance with other statutory provisions bearing on institution. The interpretive task demands a wider focus, beyond the words of § 314(d) alone, as the Court's analysis in *Cuozzo* itself shows. *See Cuozzo*, 136 S. Ct at 2141 (relying on "[t]he text of the 'No Appeal' provision, along with its place in the overall

statutory scheme, its role alongside the Administrative Procedure Act, the prior interpretation of similar patent statutes, and Congress' purpose in crafting inter partes review").

When the focus is widened to view the IPR regime as a whole, and how it compares to other aspects of the patent statute, one of the features that stands out is this: A statutorily proper petitioner—one entitled to file the petition when filed—is an essential statutory requirement for the PTO to conduct an IPR. As part of an evident balancing of interests (private as well as institutional), Congress imposed this proper-petitioner requirement to limit the extent to which it was authorizing pursuit, through *this* mechanism, of "one important congressional objective, namely, giving the Patent Office significant power to revisit and revise earlier patent grants." *Cuozzo*, 136 S. Ct. at 2139–40.

Thus, whereas the PTO may unilaterally institute an ex parte reexamination, it may not unilaterally institute an IPR. *Compare* 35 U.S.C. § 303(a) (providing, for reexaminations, that "[o]n his own initiative, and at any time, the Director may determine whether a substantial new question of patentability is raised by patents and publications discovered by him or cited under the provisions of section 301 or 302"), *with* 35 U.S.C § 314(a) (providing, for IPRs, that "[t]he Director may not authorize an inter partes review to be instituted unless the Director determines that the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition"). In this fundamental way, Congress confined this particular avenue for PTO reconsideration of issued patents to properly oppositional proceedings. *See, e.g.*, *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1381 (Fed. Cir. 2016); *Genzyme Therapeu-*

*tic Prods. Ltd. P'ship v. Biomarin Pharm. Inc.*, 825 F.3d 1360, 1367 (Fed. Cir. 2016). And the opposition may not come from just anyone for an IPR. In § 315(b), Congress barred institution when the petition is filed by someone who has waited too long (based on earlier litigation).

This seemingly fundamental structural aspect of the IPR scheme is reflected in PTO regulations. Those regulations treat compliance with the timing rule for IPRs as a matter of Board "jurisdiction." 37 C.F.R. § 42.3(b) (in section headed "Jurisdiction," providing that "[a] petition to institute a trial must be filed with the Board consistent with any time period required by statute"); *see also* 37 C.F.R. § 42.104(a) (discussing "standing" of an IPR petitioner).[2] The "jurisdiction" label, while a troublesome one in many contexts, here relates to an Administrative Procedure Act principle that the Court in *Cuozzo* invoked in stating that, at least sometimes and maybe generally, § 314(d) does *not* bar review to determine if agency action is "'in excess of statutory jurisdiction.'" 136 S. Ct. at 2142 (quoting 5 U.S.C. § 706(2)(C)). Notably, while the PTO by regulation treats the timing requirement at issue here as a matter of "jurisdiction," *Cuozzo* confirms that the plead-

---

[2]   The jurisdictional character of the § 315(b) timing requirement is not altered by the possibility, as at least one panel of the Board has concluded, that a petitioner may correct its identification of a real party in interest, required by § 312(a)(2), without losing its filing date. *Elekta, Inc. v. Varian Medical Sys. Inc.*, IPR2015-01401, 2015 WL 9898990, at *4, *6 (PTAB Dec. 31, 2015). In the federal courts, jurisdictional facts remain jurisdictional even though a plaintiff may correct a defective *pleading* of such facts, with relation back to the time of initial filing, if the newly pleaded facts were true at the time of initial filing. *See* 28 U.S.C. § 1653; *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830–31 (1989).

ing requirement, § 312(a)(3), at issue in that case cannot be characterized as "jurisdictional."

The "jurisdiction" language of *Cuozzo* is not the only basis for distinguishing the § 315(b) timing issue from the § 312(a)(3) particularity issue addressed in *Cuozzo*. The two issues differ with respect to other, related aspects of *Cuozzo*'s reasoning as well:

First, the requirement of a statutorily proper petitioner, including its timing aspect, is unrelated to the substance of the allegations of unpatentability. The interpretive issues for § 315(b), unlike those for § 312(a)(3)'s pleading rule, are wholly distinct from the patentability issues decided in assessing under § 314(a) whether the substantive challenges are likely meritorious. A § 315(d) challenge, unlike a § 312(a)(3) challenge, is not "little more than a challenge to the Patent Office's conclusion, under § 314(a), that the 'information presented in the petition' warranted review." *Cuozzo*, 136 S. Ct. at 2142. A § 315(b) determination is not like "the kind of initial determination at issue [in *Cuozzo*]—that there is a 'reasonable likelihood' that the claims are unpatentable on the grounds asserted." *Id.* at 2140.

Second, the § 315(b) timing determination is unlike various preliminary determinations that "in other contexts, [the Court has] held to be unreviewable," *id.*—determinations focused on the substance of the allegations that will be at issue in the proceeding once initiated. The Court in *Cuozzo* pointed to the unreviewability of a grand jury's finding of probable cause. *Id.* (citing *Kaley v. United States*, 134 S. Ct. 1090, 1097–98 (2014)). Another example, not cited in *Cuozzo*, is the denial of summary judgment, which is also a preliminary determination focused on the merits of the case and which is generally unreviewable after a final judgment. *See Ortiz v. Jordan*, 562 U.S. 180, 183–84 (2011); *Switz. Cheese Ass'n, Inc. v. E. Horne's Market, Inc.*, 385 U.S. 23, 25 (1966); *Function*

*Media, L.L.C. v. Google Inc.*, 708 F.3d 1310, 1322 (Fed. Cir. 2013). In those situations, the merits in dispute at the summary judgment and grand jury stages will be finally and more fully resolved during subsequent proceedings, whose results will be subject to review as part of the final judgment; and at that point, the earlier, threshold assessments—*e.g.*, whether there was probable cause presented to the grand jury or whether there was a genuine issue of material fact—are no longer pertinent. Much the same can be said, in the IPR context, of a determination of whether the challenged claims are likely unpatentable and whether related pleading requirements are satisfied. By contrast, under *Achates*, the Board's timeliness decision, which is akin to a decision on standing, will never be reviewed, even though it is not effectively mooted by the final decision.

Third, for the same reason, the § 315(b) determination is unlike the determinations made unreviewable by the statutory provisions on which § 314(d) was based, namely, § 303(c) for ex parte reexamination and old § 312(c) for inter partes reexamination. *See Cuozzo*, 136 S. Ct. at 2140 (noting § 314(d)'s relationship to § 303(c) and old § 312(c)). What those provisions barred was review of determinations interwoven with the substance of the patentability issue. *See* 35 U.S.C. § 303(c) ("A determination by the Director pursuant to subsection (a) of this section that no substantial new question has been raised will be final and nonappealable."); 35 U.S.C. § 312(c) (2011). The § 315(b) determination is different.

Fourth, as noted *supra*, the proper-party requirement is a clear structural limit (even a "jurisdictional" limit) on the authorization the PTO received from Congress to cancel bad patent claims through this scheme. In that respect it is akin to the provision limiting IPRs to only (certain) § 102 and § 103 challenges—which is a limit *Cuozzo* indicates remains enforceable by judicial review,

*Cuozzo*, 136 S. Ct. at 2141–42. And it is not a "minor statutory technicality" (like § 312(a)(3)'s "pleading" rule) that Congress could not have expected to curtail the PTO's use of IPRs to correct bad patents. *Id.* at 2140.

The foregoing considerations are only part of the inquiry into how *Cuozzo* applies to the § 315(b) timeliness requirement. *Cuozzo* also uses language that, at least when taken alone, can be read as pointing toward broad unreviewability conclusions. *Id.* at 2139 ("[T]he legal dispute at issue is an ordinary dispute about the application of certain relevant patent statutes concerning the Patent Office's decision to institute inter partes review."); *id.* at 2141 ("[O]ur interpretation applies where the grounds for attacking the decision to institute inter partes review consist of questions that are closely tied to the application and interpretation of statutes related to the Patent Office's decision to initiate inter partes review."); *id.* at 2142 ("[W]here a patent holder grounds its claim in a statute closely related to that decision to institute inter partes review, § 314(d) bars judicial review."). The proper reach of that language, however, is itself unclear.

Some of that language contains terms that on their face are limiting and call for further inquiry to identify their limits: "*certain* relevant patent statutes"; "closely related to *that* decision," referring to the just-mentioned decision of § 314(a) that the claims are likely unpatentable. *Id.* at 2139, 2142 (emphases added). And even the broadest statement—"our interpretation applies . . ."—cannot be read in isolation from *Cuozzo*'s preservation of judicial review to prevent the PTO from acting "'in excess of statutory jurisdiction'" by, *e.g.*, enforcing certain statutory constraints on IPRs, such as § 311(b)'s restriction of IPRs to certain grounds under § 102 and § 103. *Id.* at 2141–42. After all, § 311(b)'s limitation of IPRs to certain prior-art bases is certainly a "statute[] related to the Patent Office's decision to initiate inter partes review."

*Id.* at 2141. Yet *Cuozzo* confirms the judicial enforceability of that limitation.

It is not self-evident what to make of the mix of language in *Cuozzo* for purposes of determining the reviewability of PTO rulings on grounds, such as timeliness under § 315(b), other than the one before the Court in *Cuozzo*. The Supreme Court could easily have written its opinion more broadly. Instead, it took evident pains to speak in terms that left a good deal open. And then, rather than conclude that *Cuozzo* so clearly implies unreviewability of § 315(b) determinations that the Court should simply deny the petition for certiorari in the present case, the Court granted certiorari, vacated our judgment finding unreviewability, and remanded the case for further consideration. *Click-to-Call Techs.*, 136 S. Ct. at 2508.

I have set out some reasons for concluding that the background rule of reviewability should govern as to the timing requirement of § 315(b) because there is no clear enough basis for concluding otherwise. There may be additional reasons. For example, it might be relevant that the § 315(b) determination, which may depend on real-party-in-interest and privity relationships, is not always made definitively at the institution stage: discovery into pertinent facts and definitive resolution of the issue may occur after institution (which is not true for "*likely* success" or, seemingly, § 312(a)(3) pleading determinations). On the other hand, perhaps a full analysis would ultimately establish the required clear case for overcoming the default rule of reviewability even as to the § 315(b) issue.

The § 315(b) issue is a recurring one. Moreover, the principle of presumed judicial review for agency action that harms private persons is an important one. At present, it appears to me that *Achates* is incorrect and that en banc review is warranted.